(No. 32418.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EVERETT W. KIRKPATRICK, Plaintiff in Error.

*Opinion filed January 22, 1953.*

SENIFT & MYERS, of Canton, and LONDRIGAN & LON-DRIGAN, of Springfield, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and ROGER W. HAYES, State's Attorney, of Macomb, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. CHIEF JUSTICE CRAMPTON delivered the opinion of the court:

This case is a companion case of *People* v. *Bennett, post,* p. 601, decided this term, wherein we reversed the conviction in that case for the reasons assigned. The defendant in this case, Everett Kirkpatrick, was likewise found guilty of the crimes of burglary and larceny by a jury in the circuit court of McDonough County. To review this judgment, he prosecutes this writ of error.

Defendant was charged with the burglary of the Nation Wide Market in Macomb and with the theft of a quantity of food and a meat grinder therefrom. It was proved that the burglary occurred sometime between 8:00 P.M., March 19, 1951, and 8:15 A.M., March 20. Defendant and Lyle Bennett were arrested on March 23 and were later indicted, in separate indictments, for burglary and larceny. Bennett was tried first, resulting in a verdict of guilty and a sentence of not less than twelve nor more than twenty years. At that trial, Kirkpatrick was forced to take the witness stand as a witness for the State, at which time he refused

to testify, claiming that his answers might tend to incriminate him. Thereafter, defendant was tried at the same term of court, in which the jury venire was the same as in the *Bennett case*. He moved for a continuance on the grounds that he could not obtain a fair trial before a jury which would be taken from the same venire from which the Bennett jury was chosen. This motion was denied, he was tried by jury, found guilty, and sentenced to not less than twelve nor more than twenty years.

Defendant charges that the court erroneously admitted into evidence a certified copy of the record of his former conviction, in a Federal court, of a violation of the Dyer Act, prohibiting the interstate transportation of stolen motor vehicles. It is defendant's contention that this record was inadmissible since a violation of the Dyer Act is not an infamous crime as defined in the Illinois statute. (Ill. Rev. Stat. 1951, chap. 38, par. 587.) It is indisputable that the only convictions which may be shown in impeachment are convictions of infamous crimes. (*People* v. *Halkens,* 386 Ill. 167.) The difficulty arises due to the fact that by Federal law all felonies are infamous crimes. (*Falconi* v. *United States,* 280 Fed. 766.) Thus, this crime is infamous in the jurisdiction which rendered the judgment of conviction but is not among those crimes denominated infamous by the Illinois statute. This being a matter of evidence, the law of the forum controls, and since Illinois has not seen fit to classify this crime as infamous, we are of the opinion that the admission of this record was prejudicial error. We do not reach this result simply because the crime in the other jurisdiction bears a *name* different from any named in the statute. For example, a foreign jurisdiction might call the malicious killing of another "homicide," rather than "murder" as described in our statute. Nevertheless, we would hold that a conviction of such crime, being identical with our crime of murder, renders the person convicted infamous. We look to the gist of the offense,

which here is the transportation of stolen property, rather than its theft. If it is analagous to any crime in Illinois, it is the crime of receiving stolen property, which is not an infamous crime.

Plaintiff in error was taken into custody by police officers of the city of Canton about 10:30 P.M. on March 23, 1951. He was placed in the Canton jail and then removed to the Fulton County jail in Lewistown. He was awakened early the next morning by the chief of police of Macomb and taken to Macomb where he was housed in the city jail. During that day he was questioned by State's Attorney Hayes, and the Macomb chief of police, Eddie Setzer. That evening he requested of Hayes that he be permitted to see an attorney. The next day he saw only officers. The following day, March 26, he was taken to Springfield early in the morning, arriving there about 8:00 A.M. In Springfield he was housed in an "interrogation room" in a building used for investigation. The record fails to disclose the reason or necessity for this trip, or to sufficiently identify the place wherein defendant was imprisoned. During the day he was questioned, and then returned to Macomb and again locked in jail. John Bliven, deputy sheriff of McDonough County, stated that while in Springfield the plaintiff in error requested to see an attorney three or four times, but no effort was made to contact his attorney. It is thus undisputed that plaintiff in error was kept in custody for slightly more than three days, without an opportunity to furnish bail or consult an attorney, during which time he was in several different jails in Canton, Lewistown and Macomb, and taken for one day to Springfield for questioning. On different occasions during these three days he requested to see an attorney to no avail. Such conduct on the part of the officers having custody of an accused person amounts to a denial of constitutional due process and is not to be tolerated in this State. *People* v. *Frugoli,* 334 Ill. 324; *People* v. *Crabb,* 372 Ill. 347.

It is urged as error ·by plaintiff in error that the jury took People's exhibit B, a meat grinder claimed to have been stolen from the market, into the jury room with them when they retired to consider their verdict. This court has said that, even when properly admitted into evidence, exhibits entrusted to a jury at times give the party producing them a distinct advantage, and this court has held it to be within the discretion of the trial judge to refuse to permit the jury to take them to the jury room. (*People* v. *Holcomb,* 370 Ill. 299.) The presence of People's exhibit B in the jury room could be of little value to the jury in its deliberations, and would serve principally to remind the jury of the People's case and to prejudice the defendant. As a prejudice to the defendant's case it amounts to error, although not alone reversible error in this situation.

Plaintiff in error was tried before a jury drawn from the same panel from which the jury in the *Bennett case* was selected. The trial court conceded that the seven members of the panel who served on the Bennett jury could not be impartial jurors in this case and sustained challenges for cause. Every member of the panel was examined and heard the statements of the State's Attorney as to what the *Bennett case* was about. During that trial the jury selected was not confined to a particular room or place but went home at night, and after the conclusion of that trial mingled with other members of this panel in trying cases during the same term of court. Those jurors who were excused from the *Bennett case* sat down in the courtroom for a short while and listened to the *Bennett case* before departing. One or two stayed to hear the trial of the *Bennett case.* We do not know which of these jurors heard all of the testimony there offered. We do know that during the course of that trial Everett Kirkpatrick was, over his objection, called as a witness by the People and subjected to a long and laborious examination by the State's Attorney, during which this defendant was required time after time to claim

his constitutional privilege against self-incrimination. This defendant had previously requested of the court that he not be called for the reason that he might incriminate himself, nevertheless he was called as the court's witness at the behest of the State's Attorney who was himself aware that this defendant would claim his privilege. Nevertheless, the State's Attorney proceeded with a line of questioning which forced Kirkpatrick to repeatedly assert his constitutional refusal. This, we think, was error and obviously resulted in prejudice to the defendant. One or more of this panel sat in the courtroom to hear the *Bennett trial,* and for all we know may have served on the jury here. Seven members of this panel served on the Bennett jury, and, even though they were excused here, they nevertheless in the meantime associated with the remaining members of the panel. Without doubt each and every member of this panel discussed the Bennett trial with each other, and it is to be expected that some opinion would naturally be formed concerning the guilt of this defendant due to his examination in that trial and the subsequent conviction of Bennett. Although this is not a case where the same jurors served in the separate trial of two defendants charged with the same crime, still, resolving all presumptions in favor of this defendant, it is difficult to see how a fair and impartial jury could be selected from the panel presented. (*Kleindienst* v. *United States,* 48 App. D.C. 190.) Certainly, this panel conversed with one another, discussed the various cases and was entirely aware of the proceedings and verdict in the *Bennett case.* A trial of a defendant under circumstances where he must either select his jury from a panel which has in various ways been exposed to prejudice, bias and partiality (through the prior trial and conviction of another defendant jointly accused of the same crime and in which this defendant was called as a witness and forced to claim his constitutional privileges,) or exhaust all of his challenges and accept thereafter such bystanders as are summoned by

the sheriff to fill the panel, cannot be consonant with due process. Such a choice can hardly be said to insure a defendant the fair, impartial jury guaranteed by our constitution. (Const. art. II, sec. 9.) It was a cardinal rule at common law that jurors, to be qualified as impartial, should stand indifferent between the parties and be wholly free from even the suspicion of bias. This must be so if the constitutional guarantee of trial by an impartial jury is to be had. (*People* v. *Cravens*, 375 Ill. 495.) It was error to cause defendant to proceed to trial before this jury.

The statement of Paul C. Cardosi, admitted generally into evidence in the *Bennett case,* was generally admitted here, over the specific objection of counsel for defendant. The reasoning and determination in that case may well apply in this case, but due to the fact that we have already discovered numerous errors sufficient to require a reversal, it is unnecessary for us to pass upon this and the other errors here assigned.

The judgment of the circuit court of McDonough County is, therefore, reversed and the cause remanded for a new trial.

*Reversed and remanded.*