(No. 51167.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. AARON HYCHE, Appellant.

*Opinion filed October 19, 1979.*

CLARK and MORAN, JJ., dissenting.

Michael J. Rosborough, Deputy Defender, and John H. Reid, of the Office of the State Appellate Defender, of Mt. Vernon, for appellant.

William J. Scott, Attorney General, of Springfield, and Glen Bower, State's Attorney, of Effingham (Donald B. Mackay, Melbourne A. Noel, Jr., and Timothy B. Newitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Aaron Hyche, was found guilty of murder, attempted murder, and kidnapping following a jury trial in the circuit court of Effingham County. The appellate court affirmed his convictions (63 Ill. App. 3d 575), and we allowed defendant's petition for leave to appeal.

No question is raised on the sufficiency of evidence. On March 19, 1976, State Trooper Layton Davis stopped an automobile for speeding on an interstate highway. Defendant and James Taylor, the occupants of the car, became involved in an altercation with the trooper, who had been informed by State authorities that an arrest warrant for defendant was outstanding. Herman Honn, a passing motorist, witnessed the altercation, stopped his vehicle and went to help the trooper. Before he could render any aid, defendant shot the trooper three times. The trooper died of his wounds. At least two shots were

fired at Honn as he hurriedly returned to his vehicle and sped away. Honn left the highway at the first available exit and notified the State police of the incident by telephone. A short while after the trooper's death, a second motorist, Anna Mae Feldhake, saw defendant and his companion near a car in a ditch off a county road. The motorist stopped to offer them her assistance. The men forced her into the back of her car and drove off. Defendant and Taylor were arrested following a high-speed chase and an attempt to avoid a roadblock. Taylor's mother testified at defendant's trial that, four days following the trooper's death, defendant telephoned her and stated that he had killed a State trooper.

Defendant and James Taylor were charged jointly with the offenses of murder, attempted murder and kidnapping in three separate informations. On defendant's motion the causes were severed for trial. Taylor was tried by a jury in the circuit court of Effingham County and was convicted of all three offenses approximately five days before defendant's trial in the same county began.

The first of the three issues defendant raises here is whether he was deprived of his right to be tried by an impartial jury (Ill. Const. 1970, art. I, sec. 8; U.S. Const., amends. VI and XIV) because part of the jury venire from which his jury was chosen had also been members of the venire from which his codefendant's jury was selected. Before we reach this issue, however, we must first address the threshold question of whether defendant preserved for review his objections to the overlapping venire. Defendant did not challenge any members of the overlapping venire for cause because of their participation in Taylor's venire. Nor had defendant exhausted his peremptory challenges before all the overlapping members of the venire had been questioned on *voir dire*. We note, however, that defendant did file a motion for a continuance and that one of the grounds raised in support of the motion was that it would

be impossible for defendant to select unbiased and impartial jurors unless his trial were continued since he would otherwise have to draw his jury from the same pool of prospective jurors from which Taylor's jury would be selected. In his post-trial motion defendant contended that the trial court erred in denying the motion for continuance. This was sufficient to preserve the issue for review. See *People v. Faulisi* (1966), 34 Ill. 2d 187, 192, and *People v. Kirkpatrick* (1953), 413 Ill. 595, 597, in which the same issue was raised in motions for continuances.

Taylor's jury was drawn from a panel of 80 prospective jurors. An auxiliary panel of 20 jurors was also available on short notice at the discretion of the trial court. Only 63 of the 80 prospective jurors were examined on Taylor's *voir dire*. None of the 20 jurors on short notice were called in Taylor's proceedings.

Prior to defendant's trial, a special panel of 100 prospective jurors was drawn. This second panel, the persons from the original venire of 80 who had not served on Taylor's jury and who had not been excused for cause in the Taylor proceedings, and the 20 jurors on short notice in Taylor's case, constituted the pool from which defendant's jury was selected. The 23 jurors who had been examined on Taylor's *voir dire* but excused peremptorily, the 17 who were called but not examined, and the 20 on short notice who were never called were the members of Taylor's venire who were also included in defendant's venire.

Of the 12 jurors and two alternates selected for defendant's trial, six were selected from the original venire and eight were selected from the second venire of 100. Of the six from the original panel, three were from the quick-notice portion which was not called at Taylor's *voir dire*. One of the remaining three was excused prior to deliberations and did not vote for defendant's convictions. The two jurors from the original panel who actually

decided defendant's case were not challenged for cause or peremptorily, although the defense had not exhausted its peremptory challenges when they were examined and despite the fact that the trial court had clearly indicated they had been called at Taylor's *voir dire.*

Two courtrooms were utilized in the jury-selection process. The venire members were kept in one courtroom and were taken from there in panels of four to a second courtroom for questioning by the court and counsel regarding their fitness to serve as jurors in the case. After the panel of four was examined by the court on general and preliminary matters, three of the four would then be excluded while the attorneys examined prospective jurors one at a time.

The record does not show that any of the venire at defendant's trial had been present at Taylor's trial. It does not reveal that there was any discussion of the Taylor trial among the members of the venire for defendant's trial. None of the prospective jurors, including those who actually determined defendant's guilt, indicated they would be unable to set aside any impressions concerning defendant that they may have received from their participation in Taylor's venire.

On the basis of the facts recited, we hold that defendant was not denied his constitutional right to a trial before an impartial jury and is not entitled to a new trial. The sole fact that a portion of defendant's venire overlapped a portion of the venire from which Taylor's jury was selected does not justify a presumption of prejudice; absent are the additional circumstances present in the two cases on which defendant relies, *People v. Faulisi* (1966), 34 Ill. 2d 187, 192-94, and *People v. Kirkpatrick* (1953), 413 Ill. 595, 599-600, which led this court to find that bias and partiality were inherent in those situations and required a reversal of the defendants' convictions. In addition, the *voir dire* conducted here,

unlike the *voir dire* in *Faulisi,* was careful and thorough and provided defendant an opportunity to secure a fair and impartial jury.

In *Kirkpatrick* there was extensive contact during the term of court between the prospective jurors who did not serve on the codefendant's jury but who formed Kirkpatrick's venire and the jurors who actually sat on his codefendant's jury. The members of the venire who were excused from the codefendant's jury listened to the proceedings in the codefendant's case before leaving the courtroom. One or two of the prospective jurors, whose identity the court did not know, heard all the evidence in the codefendant's case, including the testimony of the defendant, who was required to take the stand in his codefendant's case but repeatedly asserted his constitutional privilege against self-incrimination. In *Faulisi,* the trial court asked all the prospective jurors generally whether they had any knowledge of the case. One volunteered that she had been called as a juror in the codefendant's case and as a consequence had formed an opinion which would prevent her from being impartial. Another juror stated he had been called in the codefendant's case and had discussed that case in a tavern. A third stated that things that had been said in the prior trial prevented her from being fair. A fourth stated that she had been in the courtroom when the codefendant's case was being tried and therefore could not be impartial. Although all these jurors were excused, this court found the facts sufficiently analogous to those in *Kirkpatrick* to justify a finding that bias and prejudice were inherent in that situation.

Here, by contrast, the defendant has pointed to no similarly extensive contact between the members of the overlapping venire and Taylor's jury; nor has he shown that the prospective jurors developed a familiarity with the evidence as a consequence of their inclusion in Taylor's

venire. Defendant has not pointed to any evidence that any of the prospective jurors had actually prejudged defendant because of matters they had heard while sitting in Taylor's venire. We are thus not presented with a situation which should give rise to an inference of juror bias requiring a reversal of defendant's convictions.

Although this court held in *Faulisi* that bias and prejudice were inherent in that situation, it stated also that the questioning by the court there was insufficient to guarantee to the defendant his right to trial before an impartial jury. This court thus left open the possibility that a properly conducted *voir dire* can eliminate problems of bias. In contrast to the *voir dire* in *Faulisi,* the jury selection process here was thorough and therefore sufficient to protect defendant's right to trial before an impartial jury. The trial court in *Faulisi* questioned the prospective jurors *en masse* whereas the jurors here were questioned first individually as part of a panel of four in a courtroom separate from where the remainder of the venire waited; they were then questioned individually by counsel while the remainder of the panel was not in the courtroom. In *Faulisi* the court refused to inquire, although so requested by counsel, whether a juror had heard any discussion in the jury room which would bear on her impartiality, whereas counsel here was given broad opportunity to root out partial jurors by asking the prospective jurors about any bias which might have arisen from their inclusion in Taylor's venire. Counsel's questioning elicited no answers indicating any actual prejudgment of defendant as a consquence of the prospective jurors' participation in Taylor's venire. Furthermore, defense counsel did not see fit to challenge any jurors for cause because of any prejudice resulting from their role in Taylor's venire; nor had counsel exhausted all available peremptory challenges when all the members of the overlapping venire had been questioned (see *People v. Ford*

(1960), 19 Ill. 2d 466, 475, holding that a defendant who has failed to use his peremptory challenges is in no position to complain about the jury selections).

We find support for our conclusion that defendant was not denied his right to trial before an impartial jury and is not entitled to a new trial by analogy to cases concerning bias from pretrial publicity. In both instances the question is whether exposure to information from beyond the courtroom concerning a defendant's case has made it impossible for the jurors to be impartial toward that defendant. In *People v. Torres* (1973), 54 Ill. 2d 384, 388-90, this court noted that the *voir dire* examination is, in instances of pretrial publicity, the most valuable tool by which to ascertain partiality or indifference among persons summoned as jurors. The same principle holds true in instances of overlapping venires. Nor were such egregiously prejudicial circumstances revealed here which would support a presumption of prejudice; the circumstances here are not analogous to those in cases involving pretrial publicity such as *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639, and *Sheppard v. Maxwell* (1966), 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507, in which prejudice was presumed because the jurors were exposed to virulent trials of the defendants by the media.

In sum, it will not be presumed that an entire jury venire is prejudiced against a defendant solely because the defendant's and a codefendant's venires overlapped. Additional circumstances strongly indicating bias and partiality must be present. In most instances, *voir dire* is the proper and effective tool to be used to discover and exclude jurors who are actually biased against a defendant for any reason, including participation in a codefendant's venire. In this case, the *voir dire* examination was thorough and there is no indication that the jury which convicted defendant was not fair and impartial.

The second issue defendant raises is whether the trial

court abused its discretion by not allowing his challenge for cause of juror Leslie Hunt when the defense first brought to the court's attention the fact that Mrs. Hunt's husband was a nephew of the man defendant was charged with killing and whether, as a consequence of the asserted error, defendant was denied his right to an impartial jury. Defendant argues also that the alleged error was not cured but was in fact compounded when the court excused Mrs. Hunt after the presentation of all the evidence but before deliberation.

After the jury was sworn but before the presentation of evidence, the defense became aware that when Mrs. Hunt was questioned as part of Taylor's venire she had volunteered that her husband was related to the deceased. The defense brought the matter to the attention of the court. In response to questioning, Mrs. Hunt stated that her personal contact with deceased was limited to five or six meetings at family gatherings and that her relationship with the deceased would not influence her because she would not want to send an innocent man to jail. Despite the urgings of her husband and his family, Mrs. Hunt stated she had no "special opinion" in this matter. Mrs. Hunt related that her husband and his family did not think she should be on the jury and had made her life difficult during the weekend after she was sworn in but before the trial began. During the questioning, Mrs. Hunt was on the verge of tears because of her husband's and his family's criticism of her willingness to be a juror.

At this point the defense had exhausted all its peremptory challenges. The trial court denied defendant's challenge for cause on the grounds that he was impressed by Mrs. Hunt's repulsion toward her treatment at home, by her honesty and intelligence, and by her commitment to the principle that defendant was innocent until proved guilty.

Following the presentation of the evidence and the

conference on instructions, both the prosecution and defense moved to have Mrs. Hunt excused and replaced by an alternate since members of Mrs. Hunt's family had admitted to defense counsel and the prosecutor that they had insisted on discussing the case with Mrs. Hunt although she had explained that she was not allowed to speak to them about the matter. The court allowed the motion but noted that it was not because he believed Mrs. Hunt was prejudiced. He then apologized to Mrs. Hunt for her difficult experience, including the fact that she had been sequestered separately from the other jurors and had otherwise been singled out for different treatment. The court made no statement regarding the substitution to other jurors.

The determination of whether or not to allow a challenge for cause is within the sound discretion of the trial judge. (*People v. Harris* (1967), 38 Ill. 2d 552, 556.) A reading of the examination of Mrs. Hunt convinces us that the trial court did not err in finding that she was an impartial juror. Mrs. Hunt unequivocally stated both that she would not convict the defendant unless the evidence established his guilt and that family pressures would not influence her. Furthermore, the trial court was able to observe Mrs. Hunt's demeanor, which convinced him of her independence and impartiality. See *People v. Cole* (1973), 54 Ill. 2d 401, 411-15, finding no error in the trial court's refusal to excuse for cause a juror who was acquainted with witnesses and officials involved in the prosecution of the defendant where the juror indicated he could be impartial.

Any doubt as to Mrs. Hunt's bias and its possible effect on defendant's conviction was removed when she was excused for cause prior to deliberation. Mrs. Hunt's contact with the remaining jurors was minimal. *Voir dire* was completed on a Friday. The jurors were sworn in and sent home for the weekend with instructions not to discuss

the case with anyone. The presentation of evidence took two days. The jurors were sequestered overnight. Mrs. Hunt was sequestered separately but did not tell the other jurors why she had been singled out for special treatment. The court's questioning of Mrs. Hunt and all the proceedings relating to the defendant's challenge for cause took place outside the presence of the other jurors. Two of the jurors lived near Mrs. Hunt, and she only speculated that they may have guessed that she was singled out because of her relationship to the deceased.

Defendant argues, however, that the fact that Mrs. Hunt was singled out for separate questioning, was sequestered separately from the other jurors, and was excused without explanation to the remaining jurors must have prejudiced the other members of the jury in that they may have assumed that defendant had threatened Mrs. Hunt or her family to secure a not guilty verdict. We note that Mrs. Hunt had volunteered to the court that she did not tell the other jurors why she had been sequestered separately but that one or two who lived near her may have guessed that it was because of her relationship to the deceased. Defendant never requested an explanation for Mrs. Hunt's treatment and did not claim in the post-trial motion that the trial court had erred in failing to offer an explanation of Mrs. Hunt's treatment, *sua sponte*. Furthermore, we see no basis for defendant's argument, since it is purely speculation that some of the jurors might have been prejudiced by Mrs. Hunt's treatment (see *People v. Cole* (1973), 54 Ill. 2d 401, 415, stating that the determination of the qualification of a juror is an issue of fact and that mere suspicion of bias is not evidence and is therefore not sufficient to disqualify a juror).

Finally, defendant contends that his conviction should be reversed because he appeared before the venire in handcuffs. On the first day of jury selection defendant appeared in open court to waive his right to be present at

trial and then left the courtroom. The trial court denied defense counsel's request that he be permitted to make certain statements outside the presence of the venire concerning the fact that defendant was waiving his right to be present at trial against counsel's advice. However, counsel made no objection to defendant's appearance before the prospective jurors in handcuffs.

We hold that defendant waived any error by failing to object to his appearance in handcuffs. The United States Supreme Court's opinion in *Estelle v. Williams* (1976), 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691, provides guidance. There the defendant appeared before the jury in prison garb without objection. The Supreme Court held that, "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." (*Estelle v. Williams* (1976), 425 U.S. 501, 512-13, 48 L. Ed. 2d 126, 135, 96 S. Ct. 1691, 1697.) A similar conclusion is justified here since similar considerations involving a defendant's right to the presumption of innocence are implicated when the defendant appears before the jury in handcuffs.

Contrary to defendant's position, our cases, *In re Staley* (1977), 67 Ill. 2d 33, and *People v. Boose* (1977), 66 Ill. 2d 261, do not mandate a different result. They are distinguishable in that the defendants there, unlike the defendant here, were improperly compelled to appear in handcuffs over objection.

For the reasons stated, the judgment of the appellate court affirming defendant's convictions is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, dissenting:

I believe the majority is seriously mistaken; and I believe the dissent in the appellate court (63 Ill. App. 3d 575, 584) is correct.

Given *People v. Faulisi* (1966), 34 Ill. 2d 187, and *People v. Kirkpatrick* (1953), 413 Ill. 595, I do not see how the majority could declare "it will not be presumed that an entire jury venire is prejudiced against a defendant solely because the defendant's and a codefendant's venires overlapped." (77 Ill. 2d at 237.) The majority attempts to distinguish the instant case from *Faulisi* and *Kirkpatrick* on the basis that in each of those cases the same venire or pool provided the jurors for the separate trials of defendant and codefendant, whereas here the overlapping venire was only part of the much larger pool from which defendant's jury was selected. *Faulisi* and *Kirkpatrick* do not suggest that had there been a partial overlapping of jury venires or pools, the problem of a biased and partial jury would have been cured. Those cases demonstrate that it is the *danger* of prejudice which requires reversal. It is difficult to show actual prejudice.

The possibility of prejudice was acutely heightened by the trial court's failure to excuse juror Leslie Hunt for cause as soon as her "conflict of interest" was revealed to the court. The fact that she was excused prior to the jury's deliberation, but after the evidence had been presented, only marginally lessened the prejudice and error. Mrs. Hunt's relationship to the deceased victim—wife of the victim's nephew—makes irrelevant her apparently sincerely held belief that she could be objective. Whether her family urged her to remove herself or urged her to "convict" the defendant, she had a conflict of interest which was more than potential. The defendant contends, reasonably I think, that the "special treatment" of Mrs. Hunt—she was singled out for questioning and sequestered separately from, and excused without explanation to, the other jurors—may have prejudiced the other members of the

jury. The majority rejects this as speculative. Although it is true that the party challenging a juror or jurors for cause bears the burden of showing that the juror has or jurors have a disqualifying state or states of mind (see *People v. Cole* (1973), 54 Ill. 2d 401, 413), this would be difficult to prove in the circumstances here. Yet the circumstances here are such that they demonstrate prejudice *per se*. The defendant should not have to prove actual prejudice or a disqualifying state of mind, perhaps an impossibility, where the juror's relationship was so palpably a conflict. Mrs. Hunt's relationship to the victim was not "a merely formal position" as in *People v. Ward* (1965), 32 Ill. 2d 253, 259, but a personal one, a relationship which resulted in pressure from her family and in-laws, as she admitted.

For these reasons, I would reverse the appellate and circuit courts.

MR. JUSTICE MORAN joins in this dissent.