NO. 4-04-0218     Filed: 2/10/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| LARRY STRICKLAND, | ) | No. 03CF248 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Harold J. Frobish, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE TURNER delivered the opinion of the court:

In September 2003, the State charged defendant, Larry Strickland, with four counts of aggravated battery (Pub. Act 92-841, §5, eff. August 22, 2002 (2002 Ill. Laws 3050, 3053) (amending 720 ILCS 5/12-4(b)(6) (West Supp. 2001))). After a January 2004 trial, a jury found defendant guilty as charged. At a March 2004 sentencing hearing, the trial court sentenced defendant to three concurrent terms of four years' imprisonment to run consecutive to defendant's six other prison terms.

Defendant appeals, asserting (1) he was denied a fair trial because he was handcuffed to a table during his jury trial and (2) the trial court erred by not inquiring into his pro se ineffective-assistance-of-counsel contention. We affirm.

I. BACKGROUND

On January 28, 2004, the trial court held a jury trial

on the charges against defendant.  Before the trial and outside the jury's presence, the following exchange took place:

"THE COURT:  All right.  Presently, you have both hands--

THE DEFENDANT: Yes, sir.

THE COURT:  --handcuffed.

THE COURT:  I typically allow, unless there is a reason not to--are you right-handed or left-handed[?]

THE DEFENDANT:  Left-handed.

THE COURT:  Left-handed.  All right.  I am going to direct that the correctional officers free your left hand, but handcuff your right hand to the table where we have an eyebolt.

THE DEFENDANT:  Yes, sir.

THE COURT:  So that would allow you some freedom with your left hand to--you have papers there, I note, so you will have free-dom of your left hand to look at your papers.

THE DEFENDANT:  Yes, sir.  Thank you. Will I pick a jury today, or what?"

Also before trial, defendant presented a letter he had written to authorities at the Pontiac Correctional Center (Cen-

ter) about problems he was experiencing. The trial court allowed defendant to discuss the letter with his attorney, who then explained to the court he was unaware of a manner in which to introduce the letter as evidence at trial. The court allowed the letter to be put in the record for appeal purposes only. Defendant again insisted he wanted his problems with prison officials brought out at trial and wanted to testify to those matters. The court stated it would allow defendant to talk with defense counsel some more.

The State presented the testimony of Bradley Knight, a correctional officer at the Center; Gary Kuhse, a sergeant at the Center; Anthony Harvey, who, at the time of the incident, was a captain at the Center; Joyce Friel, a nurse at the Center; and Karl Webber, a correctional officer in the Center's internal affairs division. Defendant did not present any evidence.

Knight testified that on the morning of October 30, 2002, he was picking up breakfast trays at the Center when he noticed a liquid substance coming from the cracks of defendant's cell door. Knight then notified the command staff, and Harvey and Kuhse responded. Kuhse ordered defendant to turn his back to them so Kuhse could open the cuffing hatch and handcuff defendant. When Kuhse opened the hatch and attempted to handcuff defendant, defendant reached out with a toothpaste tube and squirted an unknown liquid in their direction. The substance,

which smelled like a mix of feces and urine, hit Knight and Harvey on their right arms as they turned away. Knight observed that defendant's pulling away from Kuhse caused Kuhse's left ring finger to get scratched on the top of the cuffing hatch. Kuhse's finger was bleeding. After the incident, Knight went to the Center's health-care unit and saw Friel.

Defense counsel cross-examined Knight about the location of the cuffing hatch on the cell door and other aspects of the door. He also asked questions regarding the cuffing procedure and each officer's position in relationship to the door and each other. Moreover, defense counsel inquired about how Kuhse's finger was injured.

Harvey and Kuhse gave testimony similar to Knight's regarding the October 30, 2002, incident. Kuhse stated his finger was bleeding after his struggle with defendant in the cuffing hatch. Harvey indicated some of the substance landed on his right arm and right shirt sleeve. Defense counsel cross-examined both witnesses, bringing out the discrepancies in the officers' testimony about the incident's details and exploring how defendant was able to squirt the substance out of his cell directly at the officers.

Friel testified she examined all three officers at the Center's health-care unit on October 30, 2002. Knight had a foreign substance on his right arm, and thus she had him wash and

cleanse his arm. Kuhse had a cut on his wedding-ring finger, which she cleansed and disinfected, and to which she applied a triple antibiotic ointment. Harvey did not have any actual exposure when he arrived at the Center so she just took his vitals and checked him over.

Webber testified he investigated the October 30, 2002, incident and talked to defendant on December 24, 2002. Defendant explained he received a juice carton that was leaking with his breakfast. He got angry about the leaky carton but did not talk to an officer about it. Webber also testified he asked defendant if he squirted the fecal matter on the officers as alleged, and said defendant replied "yes, he did." Webber then asked defendant what exactly was in the stuff he squirted, and defendant replied "'it is something bad.'"

After the State's witnesses testified, the trial court recessed the trial for lunch and allowed defendant to discuss with defense counsel the matters to which defendant wanted to testify. When the proceedings resumed, defendant stated he no longer wanted to testify.

After hearing all of the evidence, the jury found defendant guilty of all four charges. On March 10, 2004, the trial court held a sentencing hearing at which defendant made an oral posttrial motion, asserting an ineffective-assistance-of-counsel claim. The court denied the motion. It then sentenced

defendant to three concurrent terms of four years' imprisonment on the first three counts to run consecutive to defendant's convictions in the following cases: (1) People v. Strickland, No. 85-C-13416 (Cir. Ct. Cook Co.); (2) People v. Strickland, No. 92-CF-25 (Cir. Ct. Livingston Co.); (3) People v. Strickland, No. 94-CF-76 (Cir. Ct. Livingston Co.); (4) People v. Strickland, No. 94-CF-146 (Cir. Ct. Livingston Co.); (5) People v. Strickland, No. 01-CF-250 (Cir. Ct. Livingston Co.); and (6) People v. Strickland, No. 03-CF-177 (Cir. Ct. Livingston Co.). This appeal followed.

## II. ANALYSIS

### A. Fair Trial

Defendant first argues he was denied a fair trial because the trial court ordered one of his hands to be handcuffed to the table during his jury trial. Defendant acknowledges he did not object to being handcuffed at trial but asserts this court should find the handcuffing resulted in plain error (134 Ill. 2d R. 615(a)). The application of the plain-error doctrine and what should happen when plain error occurs are sources of contention among our sister courts. Thus, we will provide a thorough background of the case law in this area.

In People v. Boose, 66 Ill. 2d 261, 265, 362 N.E.2d 303, 305 (1977), the Supreme Court of Illinois found the shackling of an accused should be avoided if possible because it (1)

- 6 -

tends to prejudice the jury against the accused, (2) restricts the accused's ability to assist counsel during trial, and (3) offends the dignity of the judicial process.  However, the Boose court recognized a defendant may be restrained where the court reasonably believes (1) the defendant may try to escape, (2) the defendant may pose a threat to the safety of the people in the courtroom, or (3) restraint is necessary to maintain order during the trial.  Boose, 66 Ill. 2d at 266, 362 N.E.2d at 305.  The determinations of whether to restrain a defendant and what restraints are most suitable are within the trial court's discretion, and a reviewing court will not overturn those decisions unless the trial court abused its discretion.  Boose, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06.

In making the determination whether to restrain a defendant, Boose directs the trial court to hold proceedings outside the presence of the jury.  During those proceedings, the defense counsel should have the opportunity to present reasons why the defendant should not be restrained, and the trial court should state for the record the reasons for restraining the defendant in the courtroom.  Boose, 66 Ill. 2d at 266, 362 N.E.2d at 305.  Additionally, the Boose court provided a nonexclusive list of 12 factors for the trial court to consider in making its determination.  Boose, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06.

That same year, our supreme court applied Boose to a bench trial, noting the shackling of an accused without clear cause jeopardizes the presumption of innocence's "value and protection and demeans our justice." In re Staley, 67 Ill. 2d 33, 37, 364 N.E.2d 72, 73 (1977). In both Boose and Staley, the supreme court affirmed the appellate courts' reversal of the trial courts' judgments. Boose, 66 Ill. 2d at 269, 362 N.E.2d at 307; Staley, 67 Ill. 2d at 38, 364 N.E.2d at 74.

Two years later, the court addressed a defendant's contention his conviction should be reversed because he appeared before the venire in handcuffs, even though he did not object to the handcuffs at that time. People v. Hyche, 77 Ill. 2d 229, 240-41, 396 N.E.2d 6, 12 (1979). Our supreme court concluded the defendant had waived any error by failing to object to his appearance in handcuffs and thus affirmed the trial court's judgment. Hyche, 77 Ill. 2d at 241, 396 N.E.2d at 12. In reaching that conclusion, it expressly distinguished Boose and Staley, noting the defendants in those cases had objected to appearing in handcuffs. Hyche, 77 Ill. 2d at 241, 396 N.E.2d at 12.

The Hyche court found guidance in the United States Supreme Court's decision in Estelle v. Williams, 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976). Hyche, 77 Ill. 2d at 241, 396 N.E.2d at 12. There, without objection, the defendant

appeared before the jury in prison attire.  Estelle, 425 U.S. at 502, 48 L. Ed. 2d at 129-30, 96 S. Ct. at 1692.  The Estelle Court began by recognizing the wearing of jail or prison attire could possibly impair the presumption of innocence and found compelling an accused to wear such attire violated the fourteenth amendment.  Estelle, 425 U.S. at 503-06, 48 L. Ed. 2d at 130-31, 96 S. Ct. at 1692-94.  However, the Court concluded that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."  Estelle, 425 U.S. at 512-13, 48 L. Ed. 2d at 135, 96 S. Ct. at 1697.

In People v. McCue, 175 Ill. App. 3d 762, 765-66, 530 N.E.2d 271, 273 (1988), the Third District followed Hyche and concluded that since the defendants failed to object to being handcuffed, they waived any alleged error that occurred by them being handcuffed throughout their trial.  The McCue court also found, in the alternative, the trial court did not abuse its discretion in ordering the defendants handcuffed based on the Boose factors.  McCue, 175 Ill. App. 3d at 766, 530 N.E.2d at 273-74.

Despite its application of Hyche in McCue, the Third

District in People v. Doss, 347 Ill. App. 3d 418, 428, 807 N.E.2d

697, 705 (2004), held the trial court's decision to keep on the

defendant's leg shackles during the trial, to which the defendant

did not object, was plain error since it deprived the defendant

of a fair trial.  There, the trial court had only indicated it

believed the jury could not see the shackles, which the Third

District found insufficient under Boose.  The Doss court reversed

the defendant's conviction and remanded for further proceedings.

 Doss, 347 Ill. App. 3d at 428, 807 N.E.2d at 705; see also

People v. Allen, 354 Ill. App. 3d 442, 446, 821 N.E.2d 335, 339

(2004), appeal allowed, 214 Ill. 2d 537, 830 N.E.2d 4 (2005) (No.

99977) (stun belt); People v. Brown, 356 Ill. App. 3d 1088, 1091,

828 N.E.2d 351, 354 (2005) (shackles).

In other cases where the defendant has failed to object

to the use of a stun belt at trial, the Third District has found

a violation of constitutional rights but concluded the cases

should be remanded to the trial court for a retrospective Boose

hearing.  See People v. Johnson, 356 Ill. App. 3d 208, 211-12,

825 N.E.2d 765, 767-68 (2005); People v. Buckner, 358 Ill. App.

3d 529, 532, 534, 831 N.E.2d 676, 679-80 (2005).

In People v. Bennett, 281 Ill. App. 3d 814, 825-26, 666

N.E.2d 899, 906-07 (1996), the First District reversed the

conviction of a defendant, who was tried in shackles, under the

- 10 -

plain-error doctrine. However, there, the defendant had re-
quested the shackles be removed at trial but had forfeited the
argument on appeal by failing to raise it in a posttrial motion
(see People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130
(1988)). Bennett, 281 Ill. App. 3d at 823, 666 N.E.2d at 905.

In People v. Crutchfield, 353 Ill. App. 3d 1014, 1022,
820 N.E.2d 507, 515 (2004), the Fifth District declined to apply
the plain-error doctrine to a defendant's challenge to his
wearing a stun belt during trial because the record clearly
demonstrated the error did not contribute to his conviction.
There, like Bennett, the defendant had objected to the stun belt
at trial but had failed to raise the issue in a posttrial motion.
Crutchfield, 353 Ill. App. 3d at 1021, 820 N.E.2d at 514. The
Fifth District also reached the same conclusion in People v.
DuPree, 353 Ill. App. 3d 1037, 1043-44, 820 N.E.2d 560, 565-66
(2004), where the defendant forfeited his stun-belt challenge by
failing to object at trial.

After considering the aforementioned case law, we
decline to reverse defendant's conviction under the plain-error
doctrine. Unlike the Third District cases that have found plain
error, our supreme court has not applied Boose and Staley when a
defendant has failed to object to appearing before a jury in
restraints. See Hyche, 77 Ill. 2d at 241, 396 N.E.2d at 12. The
Hyche court indicates it is the State's compelling the defendant

- 11 -

to wear restraints before the jury that creates the constitutional violation. Hyche, 77 Ill. 2d at 241, 396 N.E.2d at 12. Thus, when a defendant fails to object to wearing restraints, the presence of compulsion is negated, and a constitutional violation has not been established. See Hyche, 77 Ill. 2d at 241, 396 N.E.2d at 12.

Moreover, we agree with the State that the United States Supreme Court's recent decision in Deck v. Missouri, ___ U.S. ___, 161 L. Ed. 2d 953, 125 S. Ct. 2007 (2005), does not warrant a different result. There, the defendant continuously objected to wearing the shackles. Deck, ___ U.S. at ___, 161 L. Ed. 2d at 960, 125 S. Ct. at 2010. Thus, the Deck Court did not address whether a defendant's constitutional rights are violated when the defendant does not object to the restraints at trial.

Even if Deck provides a defendant's presence at trial in shackles without objection is a constitutional violation, defendant has not established plain error here. First, the Deck Court expressly states a defendant's due-process rights are violated by "the use of visible restraints." (Emphasis added.) Deck, ___ U.S. at ___, 161 L. Ed. 2d at 964, 125 S. Ct. at 2014. In this case, the trial court noted defendant's left hand was free and his right hand was handcuffed to an eyebolt attached to the table. In its brief, the State asserts defendant fails to argue and the record fails to show the single handcuff was

visible to the jury.  In his reply brief, defendant does not refute this contention.  Under the plain-error doctrine, defendant has the burden of proving an error occurred (see People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 480 (2005)) and thus had the burden of demonstrating the handcuff was visible to the jury.

Second, even if the handcuff was visible to the jury, the State has proved "'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'"  Deck, ___ U.S. at ___, 161 L. Ed. 2d at 966, 125 S. Ct. at 2015-16, quoting Chapman v. California, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 828 (1967).  Here, the evidence of defendant's guilt was overwhelming.  See People v. Kennedy, 150 Ill. App. 3d 319, 326, 501 N.E.2d 1004, 1009 (1986) (finding that even if the defendant had not been wearing leg irons, the jury would have found him guilty where the evidence was overwhelming); see also People v. Barney, No. 4-04-0217 (February 10, 2006), ___ Ill. App. 3d ___, ___ N.E.2d ___. Defendant was upset about a leaky juice carton and admitted to Webber he had squirted the fecal matter on the officers.  Harvey, Kuhse, and Knight all testified Kuhse's finger was injured when he struggled with defendant in the cuffing hatch.  Friel confirmed the injury to Kuhse's finger and the substance on Knight's arm.

B. Ineffective Assistance of Counsel

- 13 -

Defendant also contends his case must be remanded because the trial court failed to make an adequate inquiry into his pro se ineffective-assistance-of-counsel allegation. Whether the trial court made an adequate inquiry is a question of law, and thus our review is de novo. See People v. Savage, 361 Ill. App. 3d 750, 756, 838 N.E.2d 247, 252 (2005).

When a defendant raises pro se a posttrial ineffective-assistance-of-counsel claim, the trial court may, when warranted, appoint new counsel to assist the defendant with presenting his claim. People v. Pope, 284 Ill. App. 3d 330, 333, 672 N.E.2d 65, 67 (1996); People v. Krankel, 102 Ill. 2d 181, 189, 464 N.E.2d 1045, 1049 (1984). Thus, when a defendant asserts such a claim, the court must first conduct an "adequate inquiry" to determine the factual basis for the claim. People v. Johnson, 159 Ill. 2d 97, 125, 636 N.E.2d 485, 497 (1994). If the court concludes the claim lacks merit or pertains only to matters of trial strategy, then new counsel is unnecessary. However, if the inquiry indicates trial counsel's possible neglect of the case, then the court should appoint new counsel. Pope, 284 Ill. App. 3d at 333, 672 N.E.2d at 67.

Therefore, we address "'whether the trial court conducted an adequate inquiry' into the allegations." People v. Peacock, 359 Ill. App. 3d 326, 339, 833 N.E.2d 396, 407 (2005), quoting People v. Moore, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 638

- 14 -

(2003).  In conducting an inquiry, the trial court uses one or more of the following methods:  "(1) questioning the trial counsel, (2) questioning the defendant, and (3) relying on its own knowledge of the trial counsel's performance in the trial." Peacock, 359 Ill. App. 3d at 339, 833 N.E.2d at 407.

Defendant's recitation of what occurred at his sentencing hearing is deficient.  The following is a brief summary of what actually took place.  The trial court invited defendant to talk about why he sought a trial in this case, and defendant began by stating the following:

"Your Honor, I think it was a grave
misjustice that I was and that I have been
convicted.  I don't think I had the represen-
tation.  I don't think I had the proper coun-
sel to represent me.  My counsel never asked
me anything about the case.  We never talked
about any strategies about the case."

Defendant asserted he was being harassed and poisoned by prison officers.  He noted the things he believed he was being denied in prison and again stated, "I am not being given the proper attorney.  I am not being represented properly by counsel."

Defendant later requested a motion for a new trial based on ineffective assistance of counsel.  He asserted his attorney (1) did not communicate with him, except for asking him

if he would take three years; (2) failed to present evidence he had a conflict with Center officials; (3) failed to show Friel did not have a record on Harvey; and (4) failed to argue the events could not have happened the way the officers testified they did. The trial court acknowledged defendant's oral motion for a new trial and denied it, noting it had recalled the trial.

Defendant contends his case is similar to People v. Robinson, 157 Ill. 2d 68, 623 N.E.2d 352 (1993). There, the trial court denied the defendant's motion without any inquiry at all. Our supreme court stated "the trial court should have afforded the defendant the opportunity to specify and support his complaints." Robinson, 157 Ill. 2d at 86, 623 N.E.2d at 361.

Unlike Robinson, the trial court in this case did allow defendant to explain why he thought his counsel was ineffective. The court gave defendant ample opportunity to set forth and support his ineffective-assistance-of-counsel claim. Contrary to defendant's assertion, the court did not utterly fail to make an initial inquiry into his claims.

Here, the trial court's inquiry into defendant's ineffective-assistance-of-counsel claims was adequate. The court allowed defendant to present his ineffective-assistance-of-counsel claim and then relied on its own knowledge of the trial to deny defendant's posttrial motion that raised the ineffective-assistance-of-counsel claim. The court's reliance on its recol-

- 16 -

lection was adequate in this case where defendant's allegations were refuted by the trial record. See People v. Young, 341 Ill. App. 3d 379, 383, 792 N.E.2d 468, 472 (2003) (finding further inquiry into the factual basis of defendant's pro se ineffective-assistance claims was unnecessary where the claims related to trial matters and the judge hearing the posttrial motion had presided over the trial).

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.