NOTICE
Decision filed 09/29/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190352-U

NO. 5-19-0352

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Gallatin County. |
| | ) | |
| v. | ) | No. 18-CF-38 |
| | ) | |
| DANIEL MILLS, | ) | Honorable |
| | ) | Thomas J. Foster, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: The denial of the defendant's motion to withdraw guilty plea is affirmed where his plea counsel was not ineffective. The defendant's sentence is affirmed where the trial court did not abuse its discretion in determining the length of the sentence.

¶ 2   The defendant, Daniel Mills, appeals the circuit court's denial of his motion to withdraw guilty plea following a hearing. He argues that he is entitled to withdraw his guilty plea because he misunderstood his plea counsel's advice as to the percentage of his sentence that he would have to serve. The defendant also contends that the court abused its discretion in sentencing him to imprisonment of 10 years and 1 month following his

1

guilty plea to one count of aggravated driving while under the influence. For the following reasons, we affirm.

¶ 3 On June 7, 2018, the State charged the defendant with one count of aggravated driving while under the influence (625 ILCS 5/11-501(d)(1)(C) (West 2018)), a Class 4 felony (count I), and one count of driving while under the influence (*id.* § 11-501(a)(2)), a Class A misdemeanor (count II). As to count I, it was alleged that the defendant drove a 1996 Ford truck while he was under the influence of alcohol, that he "was involved in a motor vehicle crash that resulted in great bodily harm or permanent disability or disfigurement to Wade Finney, in that the defendant crossed the center line and hit Wade Finney head on, amputating Wade Finney's right leg at the knee," and that the defendant's driving under the influence was the proximate cause of Finney's injuries. As to count II, it was alleged that the defendant drove a 1996 Ford truck while he was under the influence of alcohol.

¶ 4 On August 20, 2018, the defendant entered an open guilty plea to one count of aggravated driving while under the influence. In exchange for the guilty plea, the State agreed to dismiss count II. The defendant was given an opportunity to talk to his attorney before entering the plea.

¶ 5 During the guilty plea hearing, the trial court admonished the defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012). The court first advised the defendant of the charge to which he was pleading guilty to, and the defendant indicated that he understood the charge. As to the possible penalties, the court stated:

2

" 'For a violation of subparagraph (C) of paragraph (1) of subsection (d) of 625 ILCS 5/11-501, the defendant, if sentenced to a term of imprisonment, shall be sentenced to not less than one year nor more than 12 years.'

So the sentence for this Class 4 felony of aggravated driving while under the influence that you would be pleading guilty to, Mr. Mills, carries the possibility of imprisonment in the penitentiary for a term of not less than one year and not more than 12 years. Any term of imprisonment in the Department of Corrections would be followed by an additional or consecutive term of mandatory supervised release which most people call parole, that term being one year in length. So if you are sentenced to the Department of Corrections, you would serve your term of imprisonment there which would be one and 12 years, and then immediately following your release you would serve [an] additional consecutive one year period of mandatory supervised release or parole.

* * *

You could be sentenced to probation or conditional discharge for a term up to 30 months in length. You could be fined an amount not to exceed $25,000. You could be ordered to *** serve periodic imprisonment which most people call weekends in jail for a term of up to 18 months in length. You could be ordered to pay restitution to any victim in this case for the amount of their out-of-pocket expenses."

¶ 6 The defendant answered that he understood the potential penalties he could be subject to after pleading guilty to aggravated driving while under the influence. He further told the court that he did not have any questions about those potential penalties.

¶ 7 The trial court then advised the defendant of the rights he would be waiving by pleading guilty; the defendant indicated that he understood those rights and did not have any questions about them. He again stated that he wanted to plead guilty and waive his right to a trial as well as the corresponding rights. He said that no one had forced or threatened him to plead guilty, and no promises had been made regarding his sentence apart from the fact that count II would be dismissed as part of his guilty plea. He agreed with the court that he was entering his guilty plea to count I freely, knowingly, and voluntarily.

¶ 8 The State then provided the factual basis for the charge. The trial court found the factual basis sufficient to support the plea and accepted the defendant's guilty plea.

3

¶ 9     The defendant also executed a written guilty plea form, which stated that he was entering a plea of guilty as to count I only, he waived his right to a jury trial, consented to an immediate hearing, and also consented to the trial court fixing his punishment. The written guilty plea form was signed by the defendant, who was 31 years old at the time.

¶ 10    The trial court then held a sentencing hearing on October 22, 2018. At the hearing, the court indicated that the presentence investigation report (PSI) had been filed on September 25, 2018. According to the PSI, the defendant had a criminal history going back as far as 2004, including two prior felony charges, an ordinance violation, as well as several misdemeanors and traffic tickets. The defendant had successfully completed probation on three prior occasions. He was unemployed and received social security benefits at the time the PSI was completed. The defendant reported being diagnosed with posttraumatic stress disorder, anxiety, depression, and bipolar disorder. He was undergoing treatment and taking medications for his mental health conditions. He had previously attended counseling for substance abuse, mental health, and anger management. The PSI detailed the defendant's history with drug and alcohol abuse as well as his treatment efforts. Also attached to the PSI was a substance abuse assessment indicating that the defendant possessed 7 out of 11 criteria for substance use disorder, which resulted in the defendant being classified as high risk.

¶ 11    The State called Deputy Scotty Sauls, Wade Finney, Thomas Dacosse, and Tiffany Sauls to testify at sentencing. Deputy Sauls testified that at 5:54 p.m. on June 6, 2018, he received a dispatch about a traffic crash involving an automobile and a motorcycle. When he arrived on the scene at 6:17 p.m., Deputy Sauls observed the defendant in the middle of

4

the road on his hands and knees; he was talking on his cellular telephone and crying. Deputy Sauls spoke with the defendant to see if he was injured, and this is when Deputy Sauls smelled alcohol. Deputy Sauls further testified that the defendant failed all the field sobriety tests that he was asked to perform after the collision. The defendant took a breathalyzer test at 8:06 p.m., and the reading was 0.11 at that time. The traffic crash report indicated that Deputy Sauls observed Finney lying approximately 43 feet from the impact point, and his motorcycle was approximately 23 feet from the impact point.

¶ 12    Finney testified about his recollection of the collision and his injuries. He testified that he wrapped his leg in a tourniquet as soon as possible to stop the bleeding. His "right arm was flipped around backwards where an arm shouldn't be"; he later found out that his left arm was also broken. Finney recalled that the defendant stayed at the scene, retrieved his cell phone, and helped Finney make 9-1-1 calls and a call to his wife. Finney testified that the defendant was crying at the scene. While the men were waiting for emergency services to arrive, Finney told the defendant that he forgave him.

¶ 13    Thomas Dacosse, an emergency responder who treated Finney at the scene, testified as to Finney's condition upon the ambulance's arrival and the treatment efforts performed on him. Dacosse testified that Finney was the closest patient to dying that did not die that Dacosse had seen in 18 years. Lastly, Tiffany Sauls, who prepared the PSI, testified as to her findings that she included in the report.

¶ 14    Defense counsel called Stanley Pennell, Rick Mills, Diane Darnell, and Kimberly Mills to testify on the defendant's behalf. Stanley Pennell was the defendant's childhood pastor. Pennell testified that he had been meeting with the defendant since the collision

5

and would be part of the defendant's support group going forward. Rick Mills, who is the defendant's father, testified that the defendant had been in counseling and ongoing medical treatment since the collision.

¶ 15    Diane Darnell testified that she was "like a second mom" to the defendant. She said that the defendant was remorseful about the collision, was attending counseling, and took Vivitrol shots to reduce his desire to drink alcohol. Kimberly Mills, the defendant's older sister, testified that she drove the defendant to his Alcoholics Anonymous meetings and Celebrate Recovery meetings. Kimberly believed that the defendant had shown "much improvement" with the counseling and recovery he had participated in since the incident.

¶ 16    As part of his victim impact statement, Finney testified that he did not think the defendant should only be sentenced to probation, because the defendant had received probation in the past and committed crimes thereafter. The defendant then made a statement in which he expressed remorse for his actions and explained the recovery resources in which he had been participating.

¶ 17    During arguments, the State maintained that probation was inappropriate in this instance due to the seriousness of the offense and to protect the public based on the defendant's criminal history. The State highlighted the portion of the PSI that designated the defendant as "high risk in the [driving under the influence] alcohol and drug evaluation." In addition to listing his criminal history, the State recited the defendant's history with drug and alcohol abuse as well as past treatments for his addictions. In order to "deter others from committing the same crime and to protect the public," the State requested that the defendant be sentenced to 11 years' imprisonment.

6

¶ 18   In response, defense counsel recommended that the defendant receive a term of probation so he could attend an inpatient rehabilitation facility for a substantial length of time. Defense counsel argued that the defendant was "a changed person" after the collision, that he was attending counseling at least three times per week, and that he would never drive while under the influence again. Defense counsel asserted that the defendant was remorseful and would comply with the terms of his probation. Defense counsel asked the trial court to focus on rehabilitating the defendant, rather than deterring others.

¶ 19   After hearing the evidence and counsels' recommendations, the trial court stated as follows:

> "With regard to factors in mitigation, the Court doesn't find any factors in mitigation are applicable here.
> Mr. Mills has complied with probation in the past, but I don't think he's particularly likely to comply with a term of probation, which is what the factor in mitigation talks about.
> Factor 10, the defendant is particularly likely to comply with the terms of a period of probation.
> I can't say that that is true because he's got a long way to overcome with his alcohol problem. He's working on that currently but that doesn't mean that's corrected yet.
> And probation didn't work in the past. He completed probation, but the purpose of probation is to rehabilitate, it's almost like you get a second chance, and it just hasn't worked. He's been on probation twice in the past that I could see from looking at the criminal history that's set forth in the presentence investigation and report.
> With regard to factors in aggravation, the Court finds that the defendant's conduct caused or threatened serious harm. Clearly it did in this case.
> Next, the defendant has a history of prior delinquency or criminal activity. Mr. Mills does. He has a conviction for domestic battery in 2005; he received probation and I assume he successfully completed that probation.
> He has a 2012 conviction for domestic battery and criminal trespass to buildings is what the presentence investigation report says; he received probation for that and he successfully completed probation.
> So he does have a history of prior delinquency or criminal activity."

7

¶ 20    Thereafter, the court sentenced the defendant to imprisonment of 10 years and 1 month to be followed by 1 year of MSR.[1]  The court informed the defendant that he would have to serve 85% of his sentence.

¶ 21    On November 21, 2018, the defendant filed a motion to vacate and withdraw his guilty plea.  On March 4, 2019, the defendant filed an amended motion to vacate and withdraw guilty plea and sentence arguing that he did not understand the terms and consequences of his guilty plea, he was not properly advised of such by the trial court, he received ineffective assistance of counsel and inappropriate advice of counsel, justice would be better served by letting a jury decide the defendant's guilt, and his sentence should be reduced.

¶ 22    On April 8, 2019, a hearing was held on the defendant's motion.  The defendant testified that he only consulted with his appointed counsel, Phillip Givens, for about five minutes before entering his plea.  The defendant and Givens had discussed an earlier offer from the State in which the defendant would only have to serve 50% of the sentence if he pled guilty.  According to the defendant, Givens told him on the day of the guilty plea hearing that he would likely receive three years' probation, but he would not receive a sentence above the State's original offer, which was five years' imprisonment at 50%.

¶ 23    Givens testified that, in addition to meeting with the defendant at all his court dates, Givens met with the defendant at least once or twice prior to the plea hearing.  At every court date, Givens would take 10 or 15 minutes to discuss updates with the defendant.  The

---

[1]The defendant was also ordered to pay fees, court costs, and restitution.

other two meetings occurred at Givens's office. Givens did not make any promises to the defendant about his sentence. Givens insisted that he made the defendant "fully aware" of the penalties that he was facing.

¶ 24 On July 17, 2019, the trial court entered an order denying the defendant's amended motion to withdraw guilty plea. *Inter alia*, the court found that Givens's testimony that he made no promises to the defendant about his sentence was more credible than the defendant's testimony that Givens advised him that he would receive probation. The court also disbelieved the defendant's claim that he was told he would only have to serve 50% of a sentence. The court found that it had fully advised the defendant of the possible penalties prior to the defendant entering his plea. As such, the court found that the defendant knew the penalties he was facing and that Givens did not promise the defendant that he would only receive probation. The court found that it would not make sense for the defendant to hear and accept the court's admonishments as to his potential sentence if, as he claimed, he believed that he was facing a sentence no greater than five years' imprisonment at 50%. The court highlighted that the defendant did not claim that he would not have pled guilty if he knew he would have to serve 85% of his sentence. The court further found that the defendant's contention that his sentence should be reduced or vacated based on his criminal history and the facts of the case was not sufficient to justify allowing him to withdraw his guilty plea. Finally, the court reiterated that it did not find the defendant's testimony about what his attorney allegedly told him about his sentence to be credible. The defendant appeals.

9

¶ 25                                II. ANALYSIS

¶ 26                        A. Motion to Withdraw Guilty Plea

¶ 27    On appeal, the defendant initially argues that the trial court erred in denying his motion to withdraw guilty plea because he misunderstood the percentage of his sentence that he would have to serve.[2]  The defendant specifically contends that his understanding, based on his counsel's statements, was that he would "more than likely" be sentenced to three years' probation, but he would not receive more than five years' imprisonment at 50%, which is what the State had previously offered.  Essentially, the defendant alleges that he misunderstood the truth-in-sentencing consequences of his guilty plea.

¶ 28    Section 3-6-3(a)(2.1) of the Unified Code of Corrections sets forth the general rule that those imprisoned will be entitled to day-for-day good-conduct credit against their sentences.  730 ILCS 5/3-6-3(a)(2.1) (West 2018).  The term "truth-in-sentencing" refers to a change in the statutory method that the Department of Corrections uses to calculate the amount of good-conduct credit.  *People v. Davis*, 405 Ill. App. 3d 585, 602 (2010); *People v. Salley*, 373 Ill. App. 3d 106, 109 (2007).  Under the truth-in-sentencing provisions, a person convicted of certain enumerated offenses, including aggravated driving under the influence, would receive no more than 4.5 days of credit for each month of his sentence.  730 ILCS 5/3-6-3(a)(2.3) (West 2018).  Thus, a defendant must serve at

---

[2]While the defendant also asserts that the trial court failed to properly advise him, the defendant has failed to support this assertion with any argument or authority.  Therefore, pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), that issue is waived.

least 85% of his sentence and does not receive normal day-for-day good-conduct credit. *Salley*, 373 Ill. App. 3d at 109.

¶ 29 The decision to grant or deny a defendant's motion to withdraw guilty plea is a matter within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *People v. Sharifpour*, 402 Ill. App. 3d 100, 111 (2010). An abuse of discretion occurs where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the position adopted by the court. *Id.* A defendant does not have an automatic right to withdraw his guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Rather, a defendant should be allowed to withdraw his guilty plea if doing so would correct a manifest injustice under the facts involved. *Id.* A guilty plea may be withdrawn where it was entered through a misapprehension of the facts or law, or there is doubt as to the guilt of the accused and justice would be better served by conducting a trial. *Id.*

¶ 30 "One basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice prior to entering the plea." *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39. " 'A defendant may enter a guilty plea because of some erroneous advice by counsel, but that fact alone does not destroy the voluntary nature of the plea.' " *Id.* (quoting *People v. Cunningham*, 286 Ill. App. 3d 346, 349 (1997)). Rather, " 'it must be shown that defendant was denied the effective assistance of counsel.' " *Id.* (quoting *Cunningham*, 286 Ill. App. 3d at 349).

¶ 31 To establish that counsel was ineffective in such a circumstance, a defendant must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Valdez*, 2016 IL 119860, ¶¶ 13-14. Under the first prong of that test, a

defendant must demonstrate that his attorney's performance " 'fell below an objective standard of reasonableness.' " *Id*. ¶ 14 (quoting *Strickland*, 466 U.S. at 688). As has been noted, surmounting *Strickland*'s high bar is no easy task, as judicial scrutiny of counsel's performance is highly deferential. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Hughes*, 2012 IL 112817, ¶ 63. To satisfy the second prong, a defendant must establish that he was prejudiced by his counsel's deficient performance. *Valdez*, 2016 IL 119860, ¶ 14. To establish prejudice, a defendant must show that a decision to reject the plea offer would have been rational under the circumstances. *People v. Brown*, 2017 IL 121681, ¶ 48.

¶ 32    Defendant bears the burden of establishing both parts of the *Strickland* test. *People v. Jones*, 219 Ill. App. 3d 301, 305 (1991). "[F]ailure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim." *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Similarly, claims that are refuted by the record cannot succeed. See *People v. Strickland*, 363 Ill. App. 3d 598, 607 (2006).

¶ 33    Here, we first consider the deficient-performance prong. In doing so, we note that the defendant assured the trial court that his guilty plea was not the product of any off-the-record force, threats, or promises other than that count II would be dismissed as part of his guilty plea. The defendant also agreed with the court that he was entering his guilty plea to count I freely, knowingly, and voluntarily. The record further indicates that the court explained to the defendant during his sentencing hearing that he would have to serve 85% of his sentence. At no point during his guilty plea or sentencing hearings did the defendant reveal his alleged misunderstanding that he would receive a lighter sentence. Moreover, the defendant repeatedly affirmed to the court that he understood the nature of his charges,

the potential penalties he faced, and the rights that he would be waiving by pleading guilty. Thus, the defendant's claims that Givens improperly advised him, that he did not understand the consequences of his plea, and that the court improperly admonished him are refuted by the record. See *id.*

¶ 34    Furthermore, the trial court did not find the defendant's testimony about Givens's alleged promises to be credible. The court also disbelieved the defendant's claim that he was told he would only have to serve 50% of a sentence. The court highlighted that the defendant never testified that had he been aware he would serve 85% of his sentence, he would not have pled guilty. The court found that it would not make sense for the defendant to hear and accept the court's admonishments as to his potential sentence if, as he claimed, he believed that he was facing a sentence no greater than five years' imprisonment at 50%. To the contrary, the court believed Givens's testimony that he made no promises about the defendant's sentence to be credible. We have no basis to disturb the court's credibility determinations. See *People v. Mercado*, 356 Ill. App. 3d 487, 497 (2005) (the trial court "bears the burden of assessing the credibility of witnesses who testify at a hearing on a motion to withdraw a guilty plea"); see also *Glover*, 2017 IL App (4th) 160586, ¶ 28 (we greatly defer to the trial court's credibility determinations, and they will not be disturbed on appeal absent manifest error).

¶ 35    On appeal, the defendant urges us to conclude that his counsel and/or the trial court should have advised him that he would have to serve 85% of his sentence prior to accepting his plea.    Illinois courts have traditionally distinguished the direct and collateral consequences flowing from a guilty plea. *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 20.

It is well settled that a guilty plea will not be invalidated based on counsel's failure to advise a defendant of a collateral consequence of his plea. *Id*. Whether a defendant will receive good-conduct credit is a collateral consequence, because its application is not automatic, immediate, or definite. *Id*.; *People v. Frison*, 365 Ill. App. 3d 932, 934-36 (2006).

¶ 36 Although the defendant acknowledges the foregoing principles, he asserts that this "rigid standard" should be abandoned in light of *Padilla*. 559 U.S. 356. In that case, the United States Supreme Court considered whether an attorney was required to inform his client about the possibility of deportation prior to the entry of a guilty plea. *Id*. at 360. While the Court noted that it had never distinguished between direct and collateral consequences of a guilty plea in determining whether counsel provided effective assistance, it explicitly said it was not considering whether the distinction was appropriate in general. *Id*. at 365. In the unique context of deportation, however, the Court concluded that the direct-collateral consequence distinction was inappropriate, and it held that counsel could be ineffective for failing to advise a defendant of the possibility of deportation as a consequence of his guilty plea. *Id*. at 366. In so finding, the Court reasoned that deportation, though not a criminal sanction, was a "particularly severe penalty" and is "intimately related to the criminal process." *Id*. at 365. Moreover, the Court noted that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders," and, as such, it is difficult to separate the risk of deportation from the guilty plea and resulting conviction. *Id*. at 366.

¶ 37    The Illinois Supreme Court has extended *Padilla*'s holding to the consequence of a defendant being involuntarily committed a sexually violent person.  *Hughes*, 2012 IL 112817, ¶¶ 52, 60.  The *Hughes* court found that although the possibility of involuntary commitment is not immediate, automatic, or mandatory in the same way that deportation is, "it is certain that a person convicted of a sexually violent offense is eligible for commitment and the conviction alone will definitely subject the defendant to a mandatory comprehensive evaluation for commitment nearing the end of his prison term."  *Id*. ¶ 50.  The court also recognized that, as with deportation, the collateral consequence of being committed as a sexually violent person might be "more severe than the criminal penalty imposed by the court."  *Id*. ¶ 52.

¶ 38    On the other hand, Illinois courts have continued to adhere to the direct-collateral consequence distinction with respect to good-conduct credit and have yet to extend *Padilla* into this area.  See *People v. La Pointe*, 2015 IL App (2d) 130451, ¶¶ 83-84 (declining to extend *Padilla* to advice about good-conduct credit in a postconviction case); see also *People v. Presley*, 2012 IL App (2d) 100617, ¶ 33 ("It is unclear whether *Padilla* applies to collateral consequences other than deportation.").  We find no reason to depart from this practice in the case at bar.  Unlike the consequences of deportation and involuntary commitment, it cannot be said that good-conduct credit is a "particularly severe penalty" that could be "more severe than the criminal penalty imposed by the court."  *Contra Padilla*, 559 U.S. at 365; *Hughes*, 2012 IL 112817, ¶ 50.  In fact, good-conduct credit is not a penalty at all.  Rather, it allows a "defendant to reduce his sentence by a certain amount for his good conduct."  *Frison*, 365 Ill. App. 3d at 935-36.  In further contrast from

15

deportation and involuntary commitment, the imposition and calculation of good-conduct credit are not certainties as they are not settled at the time of sentencing, are contingent upon defendant's behavior while incarcerated, and are determined primarily by agencies other than the trial court. *La Pointe*, 2015 IL App (2d) 130451, ¶ 84; *Frison*, 365 Ill. App. 3d at 935.

¶ 39   We find it important to note that:

> "We are bound to follow the United States Supreme Court's interpretation of the Constitution of the United States. [Citations.] But we are not bound to extend the decisions of the Court to arenas which it did not purport to address, which indeed it specifically disavowed addressing, in order to find unconstitutional a law of this state. This is especially true where, as here, to do so would require us to overrule settled law in this state." *People v. Wagener*, 196 Ill. 2d 269, 287-88 (2001).

¶ 40   As we have previously stated, the *Padilla* Court limited its holding to the context of deportation as a consequence of pleading guilty and specifically disavowed addressing whether the direct-collateral consequence distinction was appropriate in general. 559 U.S. at 365. To adopt the defendant's position and extend *Padilla* into the area of good-conduct credit would require us to overrule settled law of this state. Under these circumstances, we decline to read *Padilla* as upsetting the traditional direct-collateral consequence distinction in the absence of extraordinary circumstances, and we decline to extend *Padilla* in such a manner. In light of the foregoing, we find that the defendant has failed to establish that his counsel acted unreasonably in not explaining to him the applicable truth-in-sentencing provisions prior to entering his guilty plea.

¶ 41   Because we have determined that counsel's performance was not deficient, we do not address whether the defendant was prejudiced. See *Palmer*, 162 Ill. 2d at 475-76. The

16

trial court did not abuse its discretion in denying the defendant's amended motion to vacate and withdraw his guilty plea.

¶ 42                                    B. Sentencing

¶ 43    The defendant also contends that the trial court abused its discretion in sentencing him to imprisonment of 10 years and 1 month. It is well settled that a court is given broad discretion in fashioning a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). When a sentence falls within the statutory sentencing range for an offense, it may not be disturbed absent an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). As previously stated, a court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable to the extent that no reasonable person would agree with it. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 32. The court is given such deference because it is in a better position to consider, among other things, defendant's credibility, mentality, demeanor, general moral character, age, habits, and social environment. *Id.* A proper sentence balances the seriousness of the offense with the objective of restoring a defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11.

¶ 44    The Unified Code of Corrections permits the trial court to consider certain statutory factors in aggravation and mitigation when imposing a sentence of imprisonment. 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2018). In fashioning the appropriate sentence, the court must carefully weigh all of the factors in mitigation and aggravation, which include defendant's age, demeanor, habits, credibility, criminal history, social environment, and education as well as the nature and circumstances of the crime and of defendant's conduct in the commission of the crime. *People v. Calhoun*, 404 Ill. App. 3d 362, 385 (2010).

17

When such factors have been presented for the court's consideration, it is presumed, absent some contrary indication, that the factors have been considered. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). A court has considerable latitude in sentencing a defendant, as long as it neither ignores relevant mitigating factors nor considers improper aggravating factors. *Id*. at 157. When reviewing a court's sentencing decision, the reviewing court should not focus on a few words or statements made by the court. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). Instead, the determination of whether the sentence was improper must be made by considering the record as a whole. *Id*. at 526-27.

¶ 45    The defendant here pled guilty to one count of aggravated driving while under the influence, which is a Class 4 felony with a sentencing range of 1 to 12 years' imprisonment. He was sentenced to imprisonment of 10 years and 1 month, which was within the sentencing range. Nevertheless, the defendant argues his sentence should be reduced because "he has a very short criminal history" with no prior felony convictions, and because of "his remorsefulness and cooperation." Notably, the defendant has neither alleged nor shown that the trial court ignored these factors in rendering his sentence. Instead, he relies on other cases in support of his position that we should reduce his sentence. We find this approach without merit, however, as our supreme court has held that "a claim that a sentence is excessive must be based on the particular facts and circumstances of that case. If a sentence is appropriate given the particular facts of that case, it may not be attacked on the ground that a lesser sentence was imposed in a similar, but unrelated, case." *People v. Fern*, 189 Ill. 2d 48, 62 (1999).

¶ 46 We find that the defendant's sentence was appropriate given the particular facts and circumstances of this case. The record reveals that the trial court considered the defendant's criminal history and lack of felony convictions when determining the defendant's sentence. The PSI detailed the defendant's criminal history and mentioned that the defendant had successfully completed probation in the past. The PSI indicated that the defendant had two prior felony charges, which had apparently been amended or reduced prior to a conviction being entered. Because the PSI was presented to the court, we presume that the court considered this information. See *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001) ("When mitigating factors are presented to the trial court, there is a presumption it considered them.").

¶ 47 As for his remorse, the trial court heard the defendant express his remorse at sentencing. In addition, other witnesses testified at sentencing as to how remorseful the defendant was for what had happened to Finney, who also acknowledged that the defendant had been remorseful. Moreover, the court explicitly acknowledged that the defendant showed remorse and that he was trying to stop drinking alcohol. Even though the court stated that it found no factors in mitigation and thus did not formally consider the defendant's remorse as a mitigating factor, we assume, absent some contrary indication, that the court properly considered it when fashioning the defendant's sentence. See *id*.

¶ 48 Because the defendant has failed to demonstrate that the trial court ignored his criminal history and remorse in fashioning the appropriate sentence, his contention that we should reduce his sentence based on these factors is without merit. Therefore, we conclude that the court did not abuse its discretion in rendering the defendant's sentence.

19

¶ 49                               III. CONCLUSION

¶ 50    For the foregoing reasons the judgment of the circuit court of Gallatin County is hereby affirmed.

¶ 51    Affirmed.