THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT WEEKS, Defendant-Appellant.

Fourth District   No. 4—08—0534

Opinion filed August 28, 2009.

Michael J. Pelletier, Gary R. Peterson, and Stuart H. Shiffman (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and Perry L. Miller (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:
After a jury trial, defendant, Robert Weeks, was convicted of

threatening a public official in violation of subsections (a)(1)(i) and (a)(2) of section 12—9 of the Criminal Code of 1961 (720 ILCS 5/12—9(a)(1)(i), (a)(2) (West 2006)). He was sentenced to eight years' imprisonment. Defendant appeals, contending (1) a denial of due process due to the trial court's failure to order a fitness hearing, (2) ineffective assistance of counsel due to defense counsel's failure to raise the issue of his fitness to stand trial, and (3) a denial of due process due to his being shackled in the courtroom without a hearing by the trial court to determine a "manifest need" for restraints. We affirm.

## I. BACKGROUND

On October 19, 2007, defendant was charged by information with threatening, by letter dated December 4, 2006, to torture and kill a public official, Attorney General Lisa Madigan. At the time the letter was written and at the time of trial, defendant was an inmate at the Pontiac Correctional Facility.

On March 13, 2008, at the pretrial hearing, defense counsel advised the trial court defendant desired a continuance due to his concern over a new, unrelated charge which had been filed. The court questioned defendant as to why a continuance was needed in this case and defendant replied, "Well, I'm trying to work with, get some, working on my mental health disability, you know, for my case here, you know, to help my case out." The court asked defense counsel if he knew to what defendant was referring. Counsel responded he did not know if defendant was suggesting a fitness or sanity problem since there had been no discussion of this issue. Counsel believed his discussions with defendant had been rational but if defendant thought there was a potential problem, he would address it. The court entered an order directing the Department of Corrections (DOC) to immediately release defendant's mental health records to defense counsel. Counsel stated if, after reviewing defendant's mental health records, there was a reason for defendant to have a professional examination, he would bring it to the court's attention.

On March 19, 2008, defendant filed a handwritten *pro se* motion entitled "motion for fitness/wilty [*sic*] but mentally ill." The motion alleged he was currently on psychotropic medication, 200 milligrams trazodone and 150 milligrams Thorazine daily, and had been throughout his court appearances. The motion further alleged he had been diagnosed with psychotic disorder, impulse-control disorder, intermittent explosive disorder, and antisocial and borderline traits. Defendant also alleged he was unable to fully understand what was happening. He requested a fitness hearing and a psychiatric examination.

The medical records provided to defense counsel by DOC revealed defendant's mental-health history of schizophrenia and depression as well as suicidal thoughts. His medications had included trazodone, benztropine, Haldol, Cogentin, and Prozac. He was currently taking trazodone, an antidepressant, and Thorazine, used to treat psychotic disorders such as schizophrenia or manic depression. Defendant engaged in hunger strikes in July 2005, December 2006 (16 days), March 2007, June 2007, and August 2007. On February 16, 2007, defendant had surgery to remove five plastic spoons tied together with string and an eyeglass earpiece stem he had previously ingested.

On April 10, 2008, defendant and defense counsel appeared for trial. The trial judge noted defendant had filed a *pro se* motion for a fitness hearing and observed because he had an attorney, she did not think he was entitled to file the *pro se* motion. She was inclined to strike the motion. Defense counsel advised the court as follows:

"[F]itness is not a particularly difficult burden to meet. My understanding is that the defendant to be fit merely has to have some basic understanding of the fact that he's being charged with a crime and what happens in terms of various court dates including trial and have the ability to assist counsel.

It's clear from the records that [defendant] has had some psychological problems and I believe he is still being administered psychotropic medication. However, probably the court would find that he does have the ability to understand the nature of the proceedings and cooperate with me so I'm doubting there would be a finding of unfitness for those reasons.

So the motion is there. I will let the court deal with it, but I guess I cannot in good faith indicate to the court that I see an issue of fitness based upon my knowledge of the law and my interaction with [defendant]."

The trial court then asked defendant if he had written the motion. Defendant replied another inmate had written the motion for him because he did not know much law but knew he was on psychotropic medications. The court asked, "And today we're here obviously for the one case which is threatening a public official. Right?" Defendant replied, "2006 case. Yes." The court then inquired if defendant was there on other matters to which defendant said no. The following colloquy ensued between the court and defendant:

"THE COURT: You've had an opportunity to discuss this with [defense counsel]?

DEFENDANT: My case here?

THE COURT: Yes.

DEFENDANT: Yes, I have.

THE COURT: You talked to him the last time you were in court, and you brought up the mental illness at that time?

DEFENDANT: Yes, I did.

THE COURT: And [defense counsel] did obtain the records and reviewed them as you requested?

DEFENDANT: Yes. He told me he did.

THE COURT: Very good. So fitness is different than mental illness; and it sounds like, you know, you understand why you're here, what's going to happen today. That's a little bit different than whether or not you are suffering from a mental illness. So I am going to strike the motion for a fitness hearing because it was filed *pro se* and not joined in by defense counsel so we will go forward with the jury trial today."

The State presented several witnesses at trial, and defendant chose not to testify. The jury found defendant guilty of threatening a public official.

On April 16, 2008, defendant filed a motion for a new trial. The motion alleged the State failed to prove each element of the offense charged, the verdict and findings were against the manifest weight of the evidence, and defendant was improperly denied a fitness hearing. On May 30, 2008, arguments were heard on the motion. As to the fitness issue, the trial court found defendant did not present anything making the court question his fitness for trial. The court noted defendant acted appropriately for trial, presented motions, and discussed matters with his attorney. The court stated there was no basis for a fitness hearing or anything to suggest defendant was not fit for trial. The motion was denied. This appeal followed.

## II. ANALYSIS

### A. Failure To Order Fitness Hearing

The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial. *People v. Shum*, 207 Ill. 2d 47, 57, 797 N.E.2d 609, 615 (2003). A defendant is unfit to stand trial if he is "unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *People v. Burton*, 184 Ill. 2d 1, 13, 703 N.E.2d 49, 55 (1998). Section 104—10 of the Code of Criminal Procedure of 1963 states:

> "A defendant is presumed to be fit to stand trial or to plead, and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104—10 (West 2008).

The presumption of fitness is rebutted by evidence a defendant is "unable to understand the nature and purpose of the proceedings against him or [to] assist in his defense." *People v. Redd*, 173 Ill. 2d 1, 23, 670

N.E.2d 583, 594 (1996). A defendant bears the burden of proving there is a *bona fide* doubt of his fitness. *People v. Hanson*, 212 Ill. 2d 212, 221-22, 817 N.E.2d 472, 477 (2004). If a *bona fide* doubt is raised regarding a defendant's ability to understand the nature and purpose of the proceedings against him or assist in his own defense, a trial court must order a fitness hearing to determine the issue before proceeding. 725 ILCS 5/104—11(a) (West 2008).

In determining whether a *bona fide* doubt exists, the trial court may consider irrational behavior, demeanor in court, and any prior medical opinion on competence to stand trial. *People v. Easley*, 192 Ill. 2d 307, 319, 736 N.E.2d 975, 986 (2000). In addition to these factors, representation by defense counsel as to the competence of his client, while not conclusive, is important to consider. *People v. Eddmonds*, 143 Ill. 2d 501, 518, 578 N.E.2d 952, 959 (1991). The competency standard for standing trial is "whether a defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.' " *Godinez v. Moran*, 509 U.S. 389, 396, 125 L. Ed. 2d 321, 330, 113 S. Ct. 2680, 2685 (1993), quoting *Dusky v. United States*, 362 U.S. 402, 402, 4 L. Ed. 2d 824, 825, 80 S. Ct. 788, 789 (1960). Where the evidence before a trial court raises a *bona fide* doubt as to competency, due process requires the court *sua sponte* order a competency hearing. *Pate v. Robinson*, 383 U.S. 375, 385, 15 L. Ed. 2d 815, 822, 86 S. Ct. 836, 842 (1966). Whether a *bona fide* doubt exists is a question reviewed for abuse of discretion. *People v. Sandham*, 174 Ill. 2d 379, 382, 673 N.E.2d 1032, 1033 (1996).

■ The record here does not support the finding a *bona fide* doubt existed as to defendant's fitness to stand trial. At the hearing where the continuance was granted, defendant commented on "working on" his mental health disability. This prompted the court to inquire of defense counsel. This was apparently defense counsel's first notice defendant believed he had a possible fitness problem. Counsel stated defendant conducted rational discussions and there was no indication to him of any fitness or sanity problem. The court ordered a release of defendant's DOC medical records for counsel to review. Defendant's *pro se* motion followed. At the hearing on that motion, defense counsel stated he reviewed the medical records and did not believe they raised a *bona fide* doubt as to defendant's fitness. Defense counsel believed defendant had the ability to understand the nature of the proceedings and cooperate with and assist counsel.

The trial court then questioned defendant and noted the difference between fitness to stand trial and mental illness. A defendant's diminished mental capacity does not, standing alone, make him unfit

to stand trial. *People v. Johnson*, 183 Ill. 2d 176, 194, 700 N.E.2d 996, 1005 (1998).

The record shows defendant was able to understand the nature or purpose of the proceedings. He exhibited no behavior during either pretrial or trial proceedings or during the sentencing hearing which would warrant a fitness hearing or a finding defendant did not understand the proceedings or was unable to assist counsel. Defendant's behavior was rational, and his demeanor was normal. There was no evidence warranting a *sua sponte* order for a fitness hearing. Defense counsel apprised the trial court he reviewed defendant's DOC medical records and found defendant had psychological problems and was still being administered psychotropic medications. Evidence of mental illness, however, does not automatically raise a *bona fide* doubt of fitness in light of defendant's behavior during the proceedings, from pretrial through sentencing.

Defendant argues on appeal the Physician's Desk Reference indicates side effects from the medication for depression he was taking may impair thinking or reaction. This information was not presented to the trial court. Defendant also argues depression and suicidal thoughts, hunger strikes, and swallowing of foreign objects occurred during the time he wrote his threatening letter. Again, this evidence was not presented to the court. Further, defendant's mental state at the time he committed his offense is not determinative of his fitness at the time of trial.

Finally, defendant notes he was allowed to supplement the record on appeal with records from proceedings in the circuit court of Cook County against defendant. These included a motion for a fitness hearing with an attached psychological evaluation report prepared on August 13, 2008, in which the psychologist found defendant to be unfit to stand trial. This does not bolster his argument a *bona fide* doubt as to defendant's fitness existed at the time defendant was scheduled to stand trial in this case. All relevant proceedings here occurred in March and April 2008.

The clock and the calendar are a part of every criminal case. Most of defendant's aberrant behavior occurred well prior to the fitness question he raised in his *pro se* motion. The question of fitness may be fluid. Someone who appeared to have difficulty understanding his plight in 2007 may be rational in 2008. Here, defendant had rational discussions with counsel and the court, understood which offense he was appearing on, and showed a knowledge of the proceedings. Counsel declined to join in the *pro se* motion because he did not believe it would be successful and stated he could not in good faith support the motion "based on my knowledge of the law and my interaction with

defendant." The trial court did not abuse its discretion when it refused to order a fitness hearing.

### B. Ineffective Assistance of Counsel

A defendant claiming ineffectiveness of counsel must demonstrate counsel's performance was so deficient it fell below an objective standard of reasonableness and counsel's performance so prejudiced his defense as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). "Regarding the first *Strickland* prong, a defendant must prove *** (1) counsel's performance fell below an objective standard of reasonableness[ ] and (2) absent counsel's deficient performance there is a reasonable probability that the result of the proceeding[s] would have been different." *People v. Harris*, 206 Ill. 2d 293, 303, 794 N.E.2d 181, 189 (2002).

Where a defendant's assertion of ineffective assistance of counsel involves the failure to request a fitness hearing, our supreme court has stated:

"To establish that failure to request a fitness hearing prejudiced a defendant within the meaning of *Strickland*, a defendant must show that facts existed at the time of trial that would have raised a *bona fide* doubt of his ability 'to understand the nature and purpose of the proceedings against him or to assist in his defense.' [Citation.]" *Harris*, 206 Ill. 2d at 304, 794 N.E.2d at 189.

Therefore, a defendant is only entitled to relief if he shows the trial court would have had a *bona fide* doubt of his fitness and ordered a fitness hearing if it had been apprised of the evidence now referenced. See *Harris*, 206 Ill. 2d at 304, 794 N.E.2d at 189.

Defendant argues his trial attorney failed to properly articulate the legal elements of fitness; fitness to stand trial requires more than a defense counsel's observations of defendant. Defendant contends his mental history set forth in his DOC mental health records raises a *bona fide* doubt of his ability to understand the nature and purpose of the proceedings and to assist in his defense. He asserts if the information found in his medical records had been presented to the trial court, the court would have ordered a fitness hearing. Thus, prejudice has been established.

■ Claims of ineffective assistance of counsel are usually reserved for postconviction proceedings where a trial court can conduct an evidentiary hearing, hear defense counsel's reasons for any allegations of inadequate representation, and develop a complete record regarding the claim and where attorney-client privilege no longer applies. See *People v. Kunze*, 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296 (1990). In this case, no consideration of matters outside the record is

necessary to determine the issue alleged. Counsel's failure to seek a fitness hearing prevented defendant from presenting evidence to the trial court regarding that issue. Defendant's DOC medical records are already part of the record. We can envision no additional relevant facts which could be presented. Thus, we will make the determination of counsel's ineffectiveness in this direct appeal.

The medical evidence in defendant's DOC file is not sufficient to raise a *bona fide* doubt he could not possibly have understood the nature of the proceedings in this case. The issue is not one of mental illness or sanity but whether defendant could understand the proceedings against him and cooperate in his defense. "Fitness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas." *Easley*, 192 Ill. 2d at 320, 736 N.E.2d at 986.

As we have noted, the record shows defendant appeared to understand the nature of the proceedings against him and cooperated in his defense. After learning his client had a question about his own fitness, counsel obtained and reviewed defendant's DOC medical records. He pursued the question of fitness and understood defendant had some psychological problems and was being administered psychotropic medication. Counsel concluded the court would find defendant had the ability to understand the nature of the proceedings and cooperate with counsel. The evidence that shows the trial court did not abuse its discretion in refusing to order a fitness hearing also demonstrates counsel was not ineffective. Defendant has not shown there was a *bona fide* doubt concerning his fitness; thus, there was no likelihood the court would have held a fitness hearing even if it had reviewed defendant's medical file. The outcome of this case would not have been different had defense counsel asked for a fitness hearing prior to trial and sentencing. Defendant has failed to make a substantial showing of ineffective assistance of counsel.

## C. Shackling of Defendant

At trial, defendant's feet were shackled to the floor, and one of his hands was also shackled. He contends the trial court, on its own initiative and without input from either attorney, decided defendant would remain shackled throughout his trial.

Shackling of an accused should be avoided because such action tends to prejudice a jury against a defendant, restricts defendant's ability to assist counsel, and offends the dignity of the judicial process. *People v. Boose*, 66 Ill. 2d 261, 265, 362 N.E.2d 303, 305 (1977). An accused should never be placed in restraints in the presence of a jury unless there is a showing made of "manifest need." *People v. Mar-*

*tinez*, 347 Ill. App. 3d 1001, 1003-04, 808 N.E.2d 1089, 1091 (2004). The trial court must state on the record its reasons for keeping a defendant shackled and must give defense counsel an opportunity to present reasons why the defendant should not be shackled. *People v. Buss*, 187 Ill. 2d 144, 216, 718 N.E.2d 1, 41 (1999).

The need for shackling is a determination within the discretion of the trial court and is reviewed for abuse of discretion. *People v. Urdiales*, 225 Ill. 2d 354, 416, 871 N.E.2d 669, 705 (2007).

Defendant notes the factors to be considered by a trial court in determining whether manifest need for shackling exists include: (1) the seriousness of the present charge, (2) defendant's temperament and character, (3) defendant's age and physical characteristics, (4) defendant's past record, (5) any past escapes or attempted escapes, (6) evidence of a present plan of escape, (7) any threats by defendant to harm others or create a disturbance, (8) evidence of self-destructive tendencies on the part of the defendant, (9) the risk of mob violence or of attempted revenge by others, (10) the possibility of rescue attempts by any co-offenders still at large, (11) the size and mood of the audience at trial, (12) the nature and physical security of the courtroom, and (13) the adequacy and availability of alternative remedies. *Boose*, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06.

Defendant contends the trial court entered the courtroom and found defendant already in restraints. No meaningful inquiry into whether defendant should be shackled followed. Defendant argues the court abused its discretion in ruling he should be shackled throughout his trial.

Because defendant failed to object to shackling at trial or in his posttrial motion, normally he would forfeit this issue on appeal. See *People v. Barney*, 363 Ill. App. 3d 590, 593, 844 N.E.2d 80, 83 (2006). There has been considerable recent litigation concerning the issue of a trial court's failing to make a meaningful inquiry into the manifest need for shackling of a defendant at trial, and we choose to address the issue here.

Defendant notes a court may not adopt a general policy of imposing restraints unless a showing of manifest necessity is made on the record. See *Boose*, 66 Ill. 2d at 268, 362 N.E.2d at 306. Defendant argues after considering the factors enumerated in *Boose*, a court must, outside the presence of the jury, state its reasoning for shackling on the record and provide defense counsel an opportunity to offer reasons why defendant should not be shackled before shackles are allowed to be ordered by the court. *Urdiales*, 225 Ill. 2d at 416, 871 N.E.2d at 705. Defendant contends the procedures identified in *Boose* were not followed by the court here.

The record indicates, outside the presence of the jury and also before defendant was brought into the courtroom, the trial court said there were preliminary matters to address. The court believed defendant's feet should be shackled as well as one of his hands with only his writing hand free. Defense counsel responded defendant had always been calm and collected during the times he spoke with him. Counsel further stated, in reference to defendant's demeanor in the courtroom, "I don't know of any reason he won't be. Of course, you never know; but I think that would be appropriate at this point." The court agreed.

After defendant was brought into the courtroom, the trial court engaged in a discussion with defense counsel and defendant.

"THE COURT: [Defendant] is present in custody of DOC. I believe your legs are shackled [t]o the floor.

DEFENDANT: Yes, [Y]our [H]onor.

THE COURT: One hand shackled and your writing hand is free. Is that the hand you write with?

DEFENDANT: Yes, [Y]our [H]onor.

THE COURT: Very good. The charges in this case are threatening a public official. There's also another similar charge pending that is being handled by a different judge due to conflicts. But the allegations are that the Defendant wrote a letter to Attorney General Lisa Madigan threatening to torture and kill her. Do you have his DOC information? Anybody?

[DEFENSE COUNSEL]: I'm sorry, Judge. Which information?

THE COURT: Discipline record, etc., for the record, or is there no objection to—I'm obviously concerned about the specific nature of the charges.

And here we go. [Defendant] is sentenced for aggravated battery. There's [sic] numerous aggravated batteries. Violent—or pardon me. Sex offender registration, great bodily harm, ag bat [sic] great bodily harm. There's a charge in here for rape, burglary.

So based on your criminal record, sir, and also the nature of these charges, I think it is appropriate to have your one hand attached to the table but your other hand free to write. Okay. Any objection at this time, [defendant]?

DEFENDANT: No, [Y]our [H]onor.

THE COURT: Okay. Thank you."

The prosecutor then joined in the conversation.

"[PROSECUTOR]: Judge, with respect to the convictions, and they were all convictions that the court just recited, while it's just evidence the court will hear in this case there is to be evidence which will be included in the course of this trial where [defendant] does talk about and did in the letter in question talk about a plan to escape.

THE COURT: Okay.

[PROSECUTOR]: Again, I'm not saying that necessarily means he has such intention today; but it does reflect on that; and that is something I believe is relevant to the Court's consideration; and that evidence will be presented today.

[DEFENSE COUNSEL]: Judge, for the record, let me note that every time I've spoken with [defendant], which this is about the third or fourth time concerning this case here in the courthouse, he's always been calm, no problems, no threatening talk or gesture or anything of that nature.

THE COURT: As long as there's no problems, we'll leave your writing hand free and go from there; but obviously if there becomes an issue or problem, we'll have to revisit the issue. Okay?

[DEFENSE COUNSEL]: Yes, [Y]our [H]onor.

THE COURT: Do you understand, [defendant]?

DEFENDANT: Yes, [Y]our [H]onor."

■ While the trial court did not address the factors enumerated in *Boose* word for word, it did address most of the concerns enumerated therein. The court stated defendant had another case of threatening a public official (and noted the offense was threatening a judge) pending before another judge and the instant case involved a threat to the state Attorney General. His criminal record included numerous convictions for aggravated batteries, a sex-offender-registration violation, rape, and burglary. Many of these prior offenses involved violence. The court concluded it was appropriate to have one of defendant's hands attached to the table as well as shackling of his feet. Defendant had developed an escape plan mentioned in his threatening letter. The court gave defense counsel an opportunity to object and state reasons why defendant should not have been shackled.

The trial court also specifically asked defendant himself if he had any objections, and he stated he did not. No constitutional violation occurred where a defendant agrees to shackling. See *People v. Strickland*, 363 Ill. App. 3d 598, 604-05, 843 N.E.2d 897, 903 (2006), citing *People v. Hyche*, 77 Ill. 2d 229, 241, 396 N.E.2d 6, 12 (1979) (it is only where the State compels a defendant to wear restraints before a jury which creates a constitutional violation; when a defendant fails to object to wearing restraints, the presence of compulsion is negated and a constitutional violation has not been established).

Finally, the record fails to show shackling contributed to the jury's finding of guilt. The evidence was overwhelming defendant committed the offense of threatening a public official. Defendant *admitted* he mailed the letter to the Attorney General's office threatening to kill Lisa Madigan. In an interview with law enforcement, defendant agreed he had sent the letter. He further stated, if given the opportunity, he

would kill Madigan for the way she had treated prison inmates. Defendant indicated in the letter not only did he have an escape plan but he had confederates not incarcerated who could also carry out the plan to torture and kill Madigan. No evidence was presented to the contrary. It is not reasonably probable, but for the shackling of defendant, the result of the trial would have been different.

While shackling is disfavored, a defendant may be shackled if there is an indication he might "try to escape, pose a threat to the safety of courtroom occupants, or disrupt the order of the courtroom." *Urdiales*, 225 Ill. 2d at 415, 871 N.E.2d at 705. The trial court considered defendant's history of violence, the nature of the offense, and the fact he had another case pending involving a threat to a judge, plus defendant's assertions of an escape plan. The court determined it was necessary for defendant to be shackled during his trial. The court's decision was not an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. As part of our judgment, we grant the State its statutory assessment of $75 against defendant as costs for this appeal.

Affirmed.

McCULLOUGH, P.J., and TURNER, J., concur.