NOTICE
Decision filed 07/01/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240982-U

NO. 5-24-0982

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-651 |
| | ) | |
| JOHN R. PETMECKY, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err in dismissing the defendant's amended postconviction petition, where he failed to establish a constitutional violation based on the ineffective assistance of trial counsel, or postconviction counsel's lack of compliance with Illinois Supreme Court Rule 651(c). As any arguments to the contrary would lack merit, we grant petitioner's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant John R. Petmecky pled guilty to one count of predatory criminal sexual assault and was sentenced to 30 years in prison. He appeals from the second-stage dismissal of his postconviction petition. His appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of that motion.

1

¶ 3    Petmecky has filed a response. This court has examined that response, along with OSAD's *Finley* motion, the accompanying memorandum of law, and the entire record on appeal, and has concluded that this appeal indeed lacks merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 4                                  BACKGROUND

¶ 5    In June of 2021, the State charged Petmecky with various sex offenses. The circuit court appointed a psychiatrist to evaluate his mental fitness. The psychiatrist found Petmecky unfit to stand trial and recommended transfer to a mental health facility. The psychiatrist diagnosed him with "Major Depressive Disorder, Recurrent Episode, Severe, with Psychotic Features." He could not determine Petmecky's mental state at the time of the charged offense. On July 19, 2021, the court found Petmecky unfit to stand trial and remanded him for treatment based on the psychiatrist's report and the court's own observations.

¶ 6    After receiving treatment, Petmecky expressed that he was ready to be evaluated for fitness in December of 2021. On January 3, 2022, after considering the stipulated-to contents of the mental health center's final report, the factors set forth in section 104-16 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-16 (West 2020)), and the court's own observations, the circuit court found Petmecky fit to stand trial. On May 19, 2022, Petmecky pled guilty to one count of predatory criminal sexual assault in exchange for the State's dismissal of the remaining charges. The agreement did not include sentencing.

¶ 7    Before accepting the plea, the circuit court explained to Petmecky the nature of the charge to which he would be pleading guilty, the ranges of his potential sentence, fine, and mandatory supervised release, and the trial rights he would be giving up by pleading guilty. Petmecky stated that he understood these admonishments. While he answered in the affirmative when the court

asked whether he suffered from any physical or mental disability, he stated that he was taking medication, and that neither his condition nor the medication impacted his ability to understand the proceedings. Petmecky told the court that no one had forced, threatened, or pressured him into pleading guilty, and he was making his plea freely and voluntarily.

¶ 8    At a sentencing hearing on July 5, 2022, the circuit court considered police testimony about the underlying incident, victim impact statements from Petmecky's ex-wife and two daughters, and four letters and a newspaper article presented by Petmecky in mitigation. The State asked for a 48-year prison sentence, while the defense asked for a sentence of between 15 and 20 years.

¶ 9    Petmecky spoke in allocution, expressing remorse and stating that he was "truly repentant," that he cried every day, and that the experience was the "worst pain [he'd] ever felt." He also described his "hopes and dreams" for his children and his desire to repair and rebuild his relationship with them. He expressed his unconditional love for his ex-wife and children, and attributed his actions to "psychotic depression." He further stated that when he realized the gravity of what he had done, he was "so hurt and remorseful" that he "spent the next six months trying to kill" himself. Out of a desire to make things right, he began to give away money and possessions, and eventually self-reported to the police.

¶ 10    The circuit court sentenced Petmecky to 30 years in prison. On direct appeal, Petmecky made the following arguments: (1) the information failed to allege the elements of the offense pursuant to *People v. Kidd*, 2022 IL 127904, which prevented him from preparing a defense and he should be allowed to move to withdraw his guilty plea; (2) trial counsel failed to comply with Illinois Supreme Court Rule 604(d)'s certificate requirement; (3) counsel provided ineffective assistance by failing to move to dismiss the defective information; (4) numerous sentencing errors;

3

and (5) excessive sentence. *People v. Petmecky*, 2024 IL App (5th) 220587-U. We affirmed the circuit court's judgment. *Id.*

¶ 11 On December 7, 2023, while his direct appeal was pending, Petmecky filed a postconviction petition. He raised numerous issues, including similar arguments to those raised on appeal regarding our supreme court's decision in *Kidd*, and ineffective assistance of trial counsel for failing to make such an argument. He also argued that because the court did not hold a fitness hearing to determine that his mental health was restored after he had been found unfit to stand trial, there was a presumption that he was mentally unfit when he signed the plea agreement, rendering it invalid. Next, he argued that trial counsel was ineffective because she ignored his repeated, timely requests to have her withdraw his guilty plea. He further alleged that he was forced to plead guilty because his attorney told him that, if he did not, he would be sent to a different mental health facility where they would cut his stomach open and force-feed him. Petmecky also claimed his plea was involuntary because he was experiencing a psychotic episode at the time, which caused him not to understand his legal situation and prevented him from aiding counsel.

¶ 12 On December 11, 2023, the circuit court found that Petmecky presented "a gist of a constitutional claim" and appointed counsel. On May 14, 2024, appointed counsel filed an amended petition raising two claims: (1) trial counsel was ineffective by failing to raise the issue of Petmecky's fitness when he pled guilty, as there existed a *bona fide* doubt, which would have resulted in a finding of unfitness; and (2) the circuit court erred in failing to *sua sponte* raise the fitness issue, where Petmecky had exhibited a certain "series of behaviors" of which the court should have been aware.

¶ 13 According to the amended petition, the record showed that in March and April of 2022, Petmecky refused medication and food, inserted various items into his anus, drank urine,

4

hallucinated, struck his head against the wall, and made bizarre statements. In jail, he was put on "psych watch" after expressing the belief that officers and other detainees were trying to kill him. Postconviction counsel argued that the behaviors Petmecky exhibited in the months immediately preceding his guilty plea resembled his behavior in July 2021, when he was found unfit to stand trial. Therefore, based on these symptoms, trial counsel and/or the court should have called attention to the *bona fide* doubt as to Petmecky's fitness, which would have resulted in the court ordering an examination and making a finding of unfitness. Postconviction counsel attached Petmecky's jail records, which corroborated the allegations of his bizarre behavior.

¶ 14    Counsel also filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), certifying that he had consulted with Petmecky "to ascertain his contentions of deprivations of constitutional rights, [had] examined the court file and the report of proceedings of the trial, and [had] made amendments to the defendant's postconviction pleadings as necessary for adequate presentation of his contentions."

¶ 15    On June 3, 2024, Petmecky filed a *pro se* motion to supplement his postconviction petition. He repeated his prior argument of denial of due process under *Kidd* because the indictment did not set forth all elements of the charge. He further alleged that his right to be present at his own fitness hearing was violated and denied when he was not present in court on July 19, 2021, citing section 104-16(c) of the Code (725 ILCS 5/104-16(c) (West 2022)). On June 5, 2024, the circuit court addressed the matter in a docket entry, stating that it did not accept hybrid representation and refusing Petmecky's *pro se* filing. However, the court allowed Petmecky's counsel time to make any additional filings.

¶ 16    Postconviction counsel did not file any other documents, and the State moved to dismiss the amended petition. The State argued that Petmecky's bizarre behavior did "not directly show"

that Petmecky did not understand "the role of the court or defense counsel, or the import of a guilty plea, but merely indicate[d] mental health concerns that might, in light of all other evidence, indicate a fitness issue." Pointing to the record and Petmecky's behavior in court, the State argued that these facts contradicted the amended petition's argument that Petmecky would have been found unfit if examined.

¶ 17    The State noted that the evidence of Petmecky's bizarre behavior ended about a month before he pled guilty, and Petmecky behaved normally in court throughout his plea hearing. Before accepting his guilty plea, the court inquired as to Petmecky's ability to understand the proceedings. Petmecky stated that while he did have a mental disability, he was taking medication and his ability to understand the proceedings was unaffected. His further questioning by the court regarding the voluntariness of his plea and his understanding of the trial rights he was foregoing also indicated that he was able to provide appropriate, rational responses. At sentencing, he gave a coherent statement in allocution. The State also added that Petmecky acted appropriately for his June 9, 2022, interview with a probation officer for his presentence investigation. Therefore, the State concluded, there was no *bona fide* doubt as to Petmecky's fitness at the time of his plea.

¶ 18    On August 30, 2024, the circuit court granted the State's motion to dismiss the amended petition. In a written order, the circuit court explained that "there is no evidence presented to show that [trial counsel] knew or should have known about his behavior prior to the plea." The circuit court also found that Petmecky could not show prejudice, because he needed to show that not only would a fitness evaluation have been ordered, but also that the court would have found him unfit. The court explained that the standard for a finding of unfitness was whether the defendant could understand the proceedings and assist in his own defense, and Petmecky's bizarre behavior and mental illness were insufficient evidence to meet that standard. The court further wrote:

6

"While taken as true that Defendant's conduct was bizarre before the plea, at the end of this period of time on May 19, 2022, the Defendant pleaded guilty in open court. The Court's recollection of the proceeding is that Defendant appeared well-behaved. A review of the transcript also shows that Defendant understood the charges, the possible sentences, rights he was giving up for the plea, etc. There was nothing to suggest that Defendant was unable to understand the proceedings and assist his counsel."

¶ 19 Petmecky filed a notice of appeal, and OSAD was appointed as his appellate counsel.

¶ 20                                    ANALYSIS

¶ 21 OSAD argues that dismissal of the petition was proper, and there are no meritorious arguments to the contrary. In the memorandum supporting its *Finley* motion to withdraw as counsel, OSAD identifies two potential arguments that it considered raising on Petmecky's behalf:

(1) Whether Petmecky's amended postconviction petition made a substantial showing of a constitutional violation; and

(2) Whether postconviction counsel provided a reasonable level of assistance as required by Supreme Court Rule 651(c).

As both of these issues are without arguable merit, we grant OSAD leave to withdraw.

¶ 22                          A. The Post-Conviction Hearing Act

¶ 23 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Taliani*, 2021 IL 125891, ¶ 53; *People v. Edwards*, 2012 IL 111711, ¶ 21. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. The Act provides for three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. Our supreme court has discussed the first two stages, relevant here, are as follows:

"At the first stage, the circuit court determines whether the petition is 'frivolous or is patently without merit.' 725 ILCS 5/122-2.1(a)(2) (West 2010). If the petition is not dismissed at first-stage proceedings, it advances to the second stage. [Citation.]

7

During second-stage proceedings, the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 122-5 (West 2010). If the court appoints counsel at the second stage, appointed counsel is required to file a certificate showing compliance with Illinois Supreme Court Rule 651(c), namely, stating that appointed counsel has consulted with the defendant, examined the record of trial proceedings, and made any necessary amendments. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); [citation].

At the conclusion of the second stage, the court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If not, the petition may be dismissed. [Citation.] If the requisite showing is made, however, the petition advances to the third stage, and an evidentiary hearing is held. [Citation.]" *Id.* ¶¶ 26-28.

¶ 24   In the present matter, the circuit court granted the State's motion to dismiss the postconviction petition at the second stage. The second stage of proceedings tests the legal sufficiency of the petition, leaving evidentiary questions to be resolved in the third stage. *People v. Domagala*, 2013 IL 113688, ¶ 35. At the dismissal stage, "all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). The court does not engage in fact-finding or credibility determinations at this point. *Id.* A motion to dismiss "raises the sole issue of whether the petition being attacked is proper as a matter of law." *Id.*

¶ 25   The dismissal of a postconviction petition "is warranted only when the petition's allegations of fact—liberally construed in favor of the petitioner and in light of the original trial record—fail to make a substantial showing of imprisonment in violation of the state or federal constitution." *Id.* at 382. A second-stage dismissal of a defendant's petition presents a legal question, which we review *de novo. People v. Whitfield*, 217 Ill. 2d 177, 182 (2005).

¶ 26   B. Whether Petmecky Made a Substantial Showing of a Constitutional Violation

¶ 27   Criminal defendants have a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois. U.S. Const.,

8

amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Domagala*, 2013 IL 113688, ¶ 36 (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). To prevail on an ineffective assistance claim, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* (citing *Strickland*, 466 U.S. at 687). More specifically, he must show "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 28    In deciding whether a defendant has met his burden of showing deficient performance and the reasonable probability of a different result, we consider the totality of the evidence before the circuit court. *People v. Johnson*, 372 Ill. App. 3d 772, 777 (2007). The defendant must also overcome the strong presumption that the challenged action "was the product of sound trial strategy and not incompetence." (Internal quotation marks omitted.) *People v. Burrows*, 148 Ill. 2d 196, 232-33 (1992) (quoting *People v. Steidl*, 142 Ill. 2d 204, 240 (1991)); see also *Johnson*, 372 Ill. App. 3d at 777. Mistakes in strategy or tactics alone do not amount to ineffective assistance of counsel. *Johnson*, 372 Ill. App. 3d at 777-78. Furthermore, counsel "cannot be considered ineffective for failing to make or pursue what would have been a meritless motion or objection." *People v. Rogers*, 2021 IL 126163, ¶ 32.

¶ 29    In the present matter, postconviction counsel alleged in the amended petition that Petmecky received ineffective assistance of trial counsel when she failed to raise the issue that Petmecky's guilty plea was invalid because there existed a *bona fide* doubt as to his fitness at the time, and had it been investigated, the court would have found him unfit. However, as the circuit court noted in

9

its order dismissing the petition, the evidence provided in support of this argument does not satisfy the standard for a finding of unfitness to stand trial. Therefore, trial counsel was not ineffective for failing to raise the issue of fitness.

¶ 30    In discussing a defendant's assertion of ineffective assistance of counsel for failing to request a fitness hearing, our supreme court has explained that:

> "To establish that failure to request a fitness hearing prejudiced a defendant within the meaning of *Strickland*, a defendant must show that facts existed at the time of trial that would have raised a *bona fide* doubt of his ability 'to understand the nature and purpose of the proceedings against him or to assist in his defense.' [Citations.]" *People v. Harris*, 206 Ill. 2d 293, 304 (2002).

The defendant is entitled to relief "only if he shows that the trial court would have found a *bona fide* doubt of his fitness and ordered a fitness hearing if it had been apprised of the evidence now offered." *Id.* The question of whether such doubt exists rests within the discretion of the circuit court, as it was in the best position to observe the defendant and evaluate his conduct. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 53. The court abuses its discretion "only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id.*

¶ 31    In making a fitness determination, the court may consider "the defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion on defendant's competence." *Harris*, 206 Ill. 2d at 304. There are no definitive, fixed markers of unfitness that necessitate further inquiry; "the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991).

¶ 32    Evidence of a defendant's mental impairment, including medical records establishing that he suffers from a mental illness, is not sufficient to raise a *bona fide* doubt that he was unfit to

10

stand trial. *People v. Weeks*, 393 Ill. App. 3d 1004, 1012 (2009). The relevant inquiry is not one of mental illness, but whether the defendant could understand the proceedings against him and assist in his defense. *Id.* "Fitness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas." *People v. Easley*, 192 Ill. 2d 307, 320 (2000). In finding that the defendant had failed to show the existence of a *bona fide* doubt concerning his fitness, our supreme court wrote in its *Harris* decision:

> "In this case, the record clearly illustrates that defendant understood the nature and purpose of the proceedings. On several occasions, the court provided defendant with a detailed explanation of the proceedings and informed defendant of his rights during those proceedings. Following these admonishments, defendant stated that he understood. Furthermore, the record shows that defendant participated in his own defense; communicated and conferred with his trial counsel; expressed to the court his understanding of the proceedings, including his decisions to litigate rather than agree to a plea, waive his right to testify, and waive his right to a jury at the sentencing hearing; and articulated a clear statement in allocution during mitigation." *Harris*, 206 Ill. 2d at 305.

¶ 33    Here, the court considered the medical records from the mental health facility, its observation of Petmecky, and the relevant statutory factors to deem him fit to stand trial. At the plea hearing, the court further observed Petmecky's demeanor and behavior and heard his responses to questioning. Petmecky pled guilty in open court, after stating that he understood the charged offense, the potential sentence, and the trial rights he was foregoing, and that he had not been threatened, forced, or pressured into making his plea. He also stated that he was taking medication for his mental condition, and that his ability to understand the proceedings was not impaired. At the sentencing hearing, Petmecky coherently, intelligently read his prepared statement in allocution, in which he demonstrated an awareness of the gravity of his offense.

¶ 34    In his response to OSAD's motion to withdraw, Petmecky argues that his bizarre behavior served as evidence of his unfitness in July of 2021, and this led to his confinement in a mental health facility and his diagnosis of a severe mental illness. He contends that, due to the nature and

11

seriousness of his illness, as well as the level of treatment he received at the facility, he could not have recovered by the time of his guilty plea in January of 2022. Rather, he claims that he never recovered his ability to "make decisions or fully understand [his] legal situation," and adds that he remained in a psychiatric hospital and only recently recovered from his psychosis. He further alleges that he only appeared to comprehend and answer questions during the plea hearing. He claims that he answered the court's questions as he did only because he was "terrified of being sent to a worse mental hospital" and "had lost touch with reality." In support, he points to his jail records, and certain other records that he claims he timely provided to postconviction counsel, but which were not attached to his amended petition.

¶ 35 The circumstances in the present matter are very similar to those in *Harris*, and as such, the supreme court's reasoning is directly instructive. In determining him fit to plead guilty, the circuit court considered the jail records Petmecky cites as evidence of his continued mental unfitness and observed Petmecky's behavior. The fact that Petmecky had a mental illness at the time of his plea is not in question—however, Petmecky is mistaken that this necessarily rendered him unfit to understand and participate in the proceedings. Furthermore, Petmecky does not provide any support for his allegations that the severity of his mental condition and the extent of his treatment could not have restored him to fitness by the time of his plea. He similarly fails to support his claim that he could not enter a voluntary plea due to experiencing psychosis.

¶ 36 Taking into consideration the contents of Petmecky's medical records and the fact that he did have a mental illness and was taking medication for it, the transcripts nevertheless show that he was able to understand the nature and purpose of the proceedings, and that his guilty plea was knowingly, intelligently, and voluntarily made. Despite his unsupported contentions to the contrary, Petmecky failed to show the existence of a *bona fide* doubt as to his fitness, and he

therefore could not use trial counsel's failure to raise the fitness issue as the basis for an ineffective assistance claim. Similarly, there is no meritorious argument to be made that the circuit court erred in failing to raise the issue *sua sponte*.

¶ 37                    C. Whether Postconviction Counsel Violated Rule 651(c)

¶ 38    OSAD also considered raising the argument that Petmecky's postconviction counsel failed to provide a reasonable level of assistance as required by Rule 651(c). Because the right to counsel in postconviction proceedings is solely derived from statute, petitioners are entitled only to the level of assistance provided by the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999); see also 725 ILCS 5/122-4 (West 2022). As there is no constitutional right to the effective assistance of postconviction counsel, "the reasonable level of assistance provided for by the Act is 'less than that afforded by the federal or state constitutions.' " *Cotto*, 2016 IL 119006, ¶ 45 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 39    Rule 651(c) requires that postconviction counsel certify, or the record affirmatively show, that counsel (1) consulted with the petitioner to ascertain his contentions of deprivation of constitutional rights, (2) examined the trial record, and (3) amended the postconviction petition, if necessary, to adequately present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Pendleton*, 223 Ill. 2d at 472. Regarding the third obligation, counsel is not required to advance frivolous or spurious claims on the petitioner's behalf. *Pendleton*, 223 Ill. 2d at 472 (citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004)). A Rule 651(c) certificate creates a presumption that postconviction counsel provided a reasonable level of assistance. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23.

¶ 40    Here, Petmecky's appointed counsel filed an amended postconviction petition and a Rule 651(c) certificate, the latter of which affords counsel the presumption that he acted reasonably. *Id.*

13

Counsel also subpoenaed and attached jail records supporting Petmecky's claim that he was not fit to plead guilty. In amending the petition, counsel did not include several claims that Petmecky raised in his original *pro se* petition. OSAD argues that the record does not show that any of these arguments were meritorious. For the reasons explained below, we agree, and therefore determine that postconviction counsel's failure to include them would not support a claim of unreasonable assistance.

¶ 41   Postconviction counsel did not include in the amended petition Petmecky's argument that he lacked fitness to plead guilty because the circuit court did not hold a fitness hearing before determining that his mental health was sufficiently restored. This claim is rebutted by the record, in which the court stated that it "fully considered all of the contents of the [IDHS] report, including the expert opinions contained therein, the bases for these opinions, and the Court's own limited observations of the Defendant this morning, as well as the factors set forth in 725 ILCS 5/104-16." The court found Petmecky fit to stand trial based on the contents of the medical report. Nothing in the record indicates that the court overlooked any relevant information that would have resulted in a finding of continued unfitness.

¶ 42   In his response to OSAD's motion to withdraw, Petmecky argues that postconviction counsel provided unreasonable assistance by failing to attach jail records showing that he was unfit to plead guilty, and by failing to research his claim that he was experiencing psychosis at the time of his plea and "could not ascertain or make reasoned legal decisions." As explained above, the record contradicts Petmecky's unsupported claim. Furthermore, postconviction counsel's Rule 651(c) certificate creates a presumption that counsel acted reasonably in examining the record, researching any viable claims, and amending Petmecky's *pro se* petition. Thus, with no evidence

14

to support Petmecky's position that he did not comprehend or otherwise voluntarily make his guilty plea, we find that it was not unreasonable for postconviction counsel to exclude this claim.

¶ 43    Next, Petmecky argued that the information underlying his conviction failed to state all the elements of the offense, preventing him from preparing a defense. He asserted that he should therefore be allowed to withdraw his guilty plea, relying on *People v. Kidd*, 2022 IL 127904. Petmecky also included a claim of ineffective assistance of trial counsel for failing to raise such an argument. Petmecky previously raised both of these issues on direct appeal, and they are therefore barred by *res judicata*. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2005). We rejected these arguments, and they may not be relitigated.

¶ 44    Postconviction counsel also did not include Petmecky's claim of ineffective assistance of trial counsel based on her refusal to withdraw his guilty plea after Petmecky made repeated timely requests that she do so. There is no evidence in the record to support such a claim. Postconviction counsel did subpoena documents and communicate with Petmecky, but was unable to obtain any "affidavits, records, or other evidence" to support his allegations, or explain why such support could not be attached. 725 ILCS 5/122-2 (West 2022).

¶ 45    Petmecky alleged in his *pro se* petition that he was forced to plead guilty because trial counsel told him that if he did not, he would be sent to a different mental health facility, where he would allegedly have his stomach cut open and be force-fed. There is no evidence supporting this claim in the record, and it was therefore properly excluded from the amended petition for the same reason stated in the prior paragraph.

¶ 46    Finally, postconviction counsel omitted Petmecky's argument that his guilty plea was not voluntary because he was unable to understand his legal situation or aid his attorney due to a psychotic episode. As we have previously discussed in our analysis of OSAD's first potential

15

argument on appeal, the transcript from Petmecky's plea hearing directly contradicts such a claim. It shows that he understood the nature and purpose of the proceedings and could assist in his defense, and there was no *bona fide* doubt as to his fitness. The circuit court accepted his guilty plea after ensuring he understood all of the admonishments required under Illinois Supreme Court Rule 402(a), and that his plea was voluntary pursuant to Rule 402(b).

¶ 47    Petmecky also attempted to file a *pro se* motion to supplement the amended postconviction petition, which the court did not accept. However, it allowed postconviction counsel the opportunity to review and adopt Petmecky's new claims. These were that Petmecky was denied his right to be present at the first fitness hearing, where the circuit court found him unfit, and that his conviction denied him due process under *Kidd*. Postconviction counsel chose not to adopt either claim, and we again find that this could not form the basis for a meritorious claim of unreasonable assistance.

¶ 48    Regarding the first new argument, the transcript of the July 19, 2021, fitness hearing shows that Petmecky was in fact present. As to the second argument, it is barred by *res judicata* because it was litigated on direct appeal, as previously discussed. Postconviction counsel was not required to advance these meritless claims.

¶ 49    Therefore, we determine that there is no meritorious argument that could be raised on appeal regarding unreasonable assistance of postconviction counsel in violation of Rule 651(c).

¶ 50                              CONCLUSION

¶ 51    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 52    Motion granted; judgment affirmed.

16